# CONFIDENTIALITY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

**THIS CONFIDENTIALITY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT** ("Agreement") is entered into this ZI day of September, 2007, by and between Keller One Inc., its successors, subsidiaries, affiliates, related entities and assigns ("the Company"), and Andres M. Baquerizo ("Employee"), who is currently employed by, or who has accepted employment with, the Company.

## WITNESSETH:

**WHEREAS**, the Company is a leading deep foundation contractor in Florida that, through innovative techniques, evaluates and assesses construction and engineering alternatives for clients in an effort to maximize end-product structural soundness, safety and efficiency, and

**WHEREAS**, Employee is employed by, or has accepted employment with, the Company; and

**WHEREAS**, in the course of Employee's employment by the Company, the Company may disclose to Employee, and Employee may have access to, Confidential Business Information, as that term is defined below; and

**WHEREAS**, the nature of the Company's business requires that Employee carry out his duties in a confidential manner, and the Company desires to protect its Confidential Business Information, as that term is defined below, and other legitimate business interests of the Company during Employee's employment and thereafter; and

**WHEREAS**, Employee agrees and acknowledges that the Company would not have agreed to employ, or continue to employ, Employee absent the covenants and restrictions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the promises and covenants set forth in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and as a condition to, and in consideration of, the employment of Employee by the Company, the parties do hereby agree as follows:

1. If Employee remains employed by the Company from October 1, 2007 to October 1, 2008 then the Company shall pay Employee a bonus of Fifty Thousand Dollars ($50,000.00) on or before October 17, 2008..

1

2. <u>Confidential Business Information Defined</u>. Employee understands and acknowledges that, in the course of his employment with the Company, he will have access to, be entrusted or become acquainted with, and may acquire knowledge of confidential, trade secret and/or proprietary information of the Company and/or its clients (all of which is hereinafter referred to as "Confidential Business Information"). By way of illustration only, and not limitation, Confidential Business Information may include information regarding: (a) specialized computer applications and programs used by the Company in conjunction with the engineering and construction services provided to the Company's clients; (b) equipment specifications, plans, designs, and concepts; (c) discoveries, improvements, product plans, research and development information and efforts, formulas, compilations, and inventions; (d) pricing policies, profit margins, and pricing methods; (e) methods of operation, business plans, and expansion plans; (f) mailing lists, customer lists, and lists of and information relating to current, former and prospective clients and accounts; (g) marketing, advertising, public relations and/or promotional strategies, programs, plans and methods; (h) terms of contracts or proposals between the Company and its clients, vendors and/or suppliers; (i) business and sales forecasts, market analyses, costs, sales and revenue reports, budgets, other financial data which relates to the management and operation of the Company and its products and services, and other analyses not publicly disclosed; (j) employment lists, and salary, compensation and other information regarding employees, agents, independent contractors, consultants, vendors and suppliers of the Company; (k) internal procedures, programs, reports and forms of the Company; and (l) other confidential, trade secret and/or proprietary information that allows the Company to compensate successfully and that is not generally known to the public.

3. <u>Agreement to Maintain Confidentiality</u>.

   a. Employee acknowledges that the Company's Confidential Business Information is, and has been, the subject of efforts taken by the Company that are reasonable under the circumstances to maintain its confidentiality. Employee agrees to take all steps necessary, and all steps requested by the Company, to ensure that the Confidential Business Information is kept secret and confidential and for the sole use and benefit of the Company and to comply with all applicable policies and procedures of the Company regarding the storage and security of all Confidential Business Information, whether in hard copy form or stored on computer disks or other electronic media.

   b. Employee acknowledges that the Company's Confidential Business Information is a special and unique asset of the Company and derives independent economic value, actual or potential, from not being generally known by the public or by other persons or entities that can

obtain economic value from its disclosure. Employee further agrees that the disclosure of any Confidential Business Information to competitors of the Company, both during and after his employment with the Company, or use of any Confidential Business Information for Employee's own benefit, would constitute misappropriation of the Confidential Business Information.

c. Employee covenants and agrees that he will not use any of the Company's Confidential Business Information for any purpose other than in the course and scope of his employment with the Company and for the exclusive benefit of the Company. Except for disclosure in the course and scope of his employment with the Company and on behalf of the Company, Employee will never at any time, either during or after his employment with the Company, directly or indirectly use, publish, disseminate, distribute or otherwise disclose any Confidential Business Information to any other person, firm, corporation, partnership, association or other entity.

4. <u>Ownership and Return of Documents</u>. Employee acknowledges that all documents, records and materials that he prepares, and Confidential Business Information that he may have access to, may be given or entrusted to him, or that he may acquire knowledge of in the course of his employment with the Company, are and shall remain the sole property of the Company. In the event that Employee's employment with the Company terminates for any reason, or upon demand, Employee agrees to immediately return or turn over to the Company all Confidential Business Information (and any copies thereof) in his possession, custody or control, as well as any documents, records, notes, or other work product, materials, information and other property in his possession, custody or control which is in any way connected with or derived from his services to, or affiliation with, the Company.

5. <u>Covenant Not to Compete</u>. During the term of Employee's employment by the Company and for a period of two years after the termination or separation of Employee's employment with the Company for any reason, Employee agrees that he will not individually or jointly, directly or indirectly, whether as an employee, employer, officer, director, operator, agent, independent contractor, consultant, stockholder, partner, owner, investor, advisor, joint venturer or otherwise, compete with the Company by engaging in the construction of deep foundations, including but not limited to augered piling, excavation shoring and vibro compaction or replacement, in the State of Florida.

6. <u>Non-Solicitation of Employees</u>. Employee agrees that during his employment with the Company and for a period of two years after the termination of Employee's employment with the Company for any reason, Employee will not, directly or indirectly, himself or through any individual entity: (1) solicit,

3

hire, retain, engage, induce or attempt to induce away, or aid, assist or abet any person or entity in soliciting, hiring, retaining, engaging, inducing or attempting to induce away from his/her employment or association with the Company any then current officer, director, employee, independent contractor, consultant, agent, or other personnel or representative of the Company, or (ii) otherwise disrupt, impair, damage or interfere with any relationship between the Company and any of its current or former officers, directors, employees, independent contractors, consultants, agents, or other personnel or representatives.

7. <u>Non-Solicitation of Customers/Clients</u>. During Employee's employment with the Company and for a period of two years following the termination or separation of Employee's employment with the Company for any reason, Employee agrees not to, either individually or jointly, directly or indirectly, either as an employee, employer, operator, agent, independent contractor, owner, consultant, partner, investor or otherwise, call upon, solicit or provide to any actual or identifiable prospective client or customer of the Company any products or services that compete with the products and services offered by the Company.

8. <u>Reasonable Restrictions</u>. Employee acknowledges and agrees that the Company regularly conducts business in the State of Florida, and has plans to extend its business even further throughout the State of Florida. Accordingly, Employee agrees that the covenants set forth in this Agreement are reasonable and necessary to protect the Company's legitimate business interests, including, without limitation, the Company's valuable and confidential business information, the Company's trade secrets, the Company's proprietary information, the Company's customer relationships, the Company's substantial relationships with identifiable prospective customers, and the Company's goodwill. Employee also agrees that the two year duration of these covenants is reasonable and that the enforcement of the covenants, whether by injunctive relief, damages, or otherwise, is in no way contrary to the public health, safety and welfare.

9. <u>Intellectual Property</u>. Any and all ideas, inventions, improvements, works of authorship, data processes, formulas, computer software programs and discoveries, whether or not patentable or eligible for copyright, trademark or other analogous protection, in any such case solely or jointly made, developed, discovered, conceived or reduced to practice by the Company (whether at the request or suggestion of any officer or employee of the Company or otherwise, whether alone or in conjunction with others, and whether during regular hours of work or otherwise) during the term of the Employee's employment with the Company, which arise from the fulfillment of the Employee's duties and which may be directly or indirectly useful in the business of the Company or its affiliates shall be promptly and fully disclosed in writing to the President of the Company. The Employee's entire right, title

and interest (both domestic and foreign) in and to the foregoing shall become the sole property of the Company. All papers, drawings, models, data and other materials relating to any of the foregoing shall be included in the definition of Confidential Business Information, and shall remain the sole property of the Company, and the Employee shall return to the Company all such papers, and all copies thereof, including all originals and copies contained in the computer hard drives or other electronic or machine readable format, upon the earlier of the Company's request therefore or the cessation of the Employee's employment with the Company. The Employee shall execute, acknowledge and deliver to the Company any and all further assignments, contracts or other instruments the Company deems necessary or expedient, without further compensation, to carry out and effectuate the intents and purposes of this Agreement and to vest in the Company each and all of the rights granted or stated to be granted to the Company.

In the event the Company is unable, after reasonable effort, to secure the Employee's signature on any letter patent, copyright or other analogous protection relating to the foregoing whether because of the Employee's physical or mental incapacity or for any other reason whatsoever, the Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as his agent and attorney-in-fact, to act for and on his behalf and stead to execute and file any such application(s) and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent, copyright or other analogous protection relating to the foregoing with the same legal force and effect as if executed by the Employee. The Employee represents and warrants to the Company, that except as expressly set forth in <u>Exhibit A</u> attached hereto, there is no existing intellectual property that the Employee desires to remove from the operation of this Agreement and the Employee hereby releases the Company from any and all claims by the Employee by reason of any use by the Company of such intellectual property.

10. <u>Specific Performance; Injunction</u>.

   a. Employee understands that if he violates any of the terms of this Agreement while employed by the Company, Employee will be subject to disciplinary action up to and including immediate termination of employment.

   b. Employee further agrees and acknowledges that the covenants and undertaking contained in this Agreement relate to matters that are of a special, unique and extraordinary character and that a violation or breach by Employee of any of the covenants and undertakings contained in this Agreement will cause irreparable harm or damage to the Company, the monetary amount of which would be difficult, if not impossible, to ascertain and which cannot be adequately compensated. As a result, Employee agrees that, in addition to any other available

remedies, the Company shall have the right to seek and obtain specific performance, an injunction, restraining order or other equitable relief from a court of competent jurisdiction to enforce this Agreement in the event of an actual, potential or threatened violation or breach of any provision of this Agreement. Without regard to whether the Company seeks or is granted any such equitable relief, the Company will not be prejudiced in its right to seek and be awarded damages for the violation or breach of any provision of this Agreement. Without regard to whether the Company seeks or is granted any such equitable relief, the Company will not be prejudiced in its right to seek and be awarded damages for the violation or breach of any provision of this Agreement.

c. Employee understands that the rights and remedies provided for in this Agreement are cumulative and will be in addition to any rights and remedies otherwise available to the Company under applicable law. Employee also agrees that the existence of any claim or cause of action that he may have against the Company, whether predicated on this Agreement or otherwise, shall not constitute a valid defense to the enforcement of the covenants and undertakings contained in this Agreement.

d. Employee further agrees and acknowledges that should legal proceedings be initiated by the Company to enforce the restrictive covenants contained in Sections 5, 6 and/or 7 of this Agreement, the commencement of the two year duration of said restrictive covenants will commence on the date of the entry of an order granting the Company injunctive, monetary or other relief from Employee's actual, potential or threatened violation or breach of said restrictive covenants will remain in effect for the next succeeding two years. Employee acknowledges and agrees that the purpose and effect of the restrictive covenants contained in Sections 5, 6 and 7 of this Agreement would be frustrated by measuring the two year duration of said restrictive covenants from the termination or separation of Employee's employment where Employee fails to honor the restrictive covenants contained in Sections 5, 6 and/or 7 of this Agreement until directed to do so by court order.

e. This Agreement is intended to benefit the Company and any parent, subsidiary, related entity, and affiliate. Accordingly, this Agreement and the restrictive covenants herein may be enforced by the Company and any parent, subsidiary, related entity, and/or affiliate. The Agreement and its restrictive covenants may be assigned by the Company without the knowledge or consent of the Employee, and the Agreement and its restrictive covenants may be enforced by any assignee of, or successor to, the rights set forth in this Agreement.

11. <u>Maximum Restrictions of Time, Scope and Geographical Area</u>. Although the restrictions in this Agreement regarding competition, solicitation and breach of confidentiality are considered by the parties to be reasonable for the purposes of protecting the value intended to be received by the Company from this Agreement with Employee, if any such restriction is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time, or over too broad a range of activities, or in too large a geographic area, or otherwise, then such restriction shall be interpreted only to extend over the maximum period of time, range of activities, geographic area, or other terms, as to which it may be enforceable. The parties agree that the court making the determination of invalidity or unenforceability shall have the power to reduce the scope, duration, or geographic area, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision, and this Agreement shall be enforceable as so modified after the expiration of the time within which the judgment may be appealed.

12. <u>Notices</u>. Employee agrees and acknowledges that during his employment with the Company and for a period of two years following the termination or separation of Employee's employment with the Company for any reason, Employee will inform each prospective new employer he may have, prior to accepting employment, of the existence of this Agreement, and he shall provide each prospective employer with a copy of this Agreement. Employee also agrees and acknowledges that the Company has the right to independently contact any potential or actual future employer of Employee to notify the future employer of Employee's obligations under this Agreement and provide such future employer with a copy of this Agreement. The Company shall also be entitled to notify such actual or potential future employer of the Company's understanding of the requirements of this Agreement and what steps, if any, the Company intends to take to ensure compliance with or enforcement of this Agreement.

13. <u>Agreement Not to Be Construed as Creating a Contract of Employment</u>. Employee understands and acknowledges that Employee's execution of this Agreement will in no way be construed as creating a contract of employment between the Company and Employee for any specific period of time. Unless expressly agreed upon in writing between Employee and the Company's President, Employee is and shall remain an "at-will" employee. This means that, unless expressly agreed upon in writing between Employee and the Company's President, either the Company or Employee may terminate the employment relationship at any time, for any reason or no reason, and with or without cause and with or without notice.

14. <u>Previously Executed Employment Agreements, Restrictive Covenants, and Confidentiality/Trade Secret Agreements</u>. Employee understands and acknowledges that any Employment Agreements, restrictive covenants

7

(including, without limitation, non-compete and non-solicitation covenants), and agreements governing or addressing the maintenance, retention, disclosure or return of confidential/trade secret information executed prior to the date of this Agreement (collectively "previously executed agreements") shall remain in full force and effect to the fullest extent permitted under law. To the fullest extent possible, all previously executed agreements shall be read and interpreted so not to conflict with any terms of this Agreement. If any terms of any previously executed agreements cannot reasonably be read and interpreted so not to conflict with this Agreement, then the terms, conditions, and provisions of this Agreement shall prevail and control over the conflicting terms of the previously executed agreements.

15. <u>Severability</u>. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, with invalidating the remainder of such provisions or the remaining provisions of this Agreement.

16. <u>Attorney's Fees and Costs</u>. In any action to enforce any provisions or covenants contained within this Agreement, the prevailing party shall be entitled to recover its attorney's fees and costs incurred at both the trial court and appellate court levels.

17. <u>Compete Agreement</u>. This Agreement constitutes the entire agreement between the parties and supersedes all other prior agreements and understandings, both written and oral, with respect to the subject matter hereof.

18. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement and each of which shall be deemed an original.

19. <u>Successors and Assigns; Assignment</u>. This Agreement and its restrictive covenants may be assigned by the Company without the knowledge or consent of the Employee, and the Agreement and its restrictive covenants may be enforced by any assignee of, or successor to, the rights set forth in this Agreement. Further, the Agreement shall survive any sale of assets, merger, consolidation, or other change in corporate structure.

20. <u>Choice of Law; Venue</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Florida. The parties hereto agree that all actions and proceedings relating hereto shall be litigated in a competent court of jurisdiction in Miami-Dade County, Florida.

8

21. <u>Amendment and Waiver</u>. This Agreement may not be changed or amended except in writing signed by the parties. The waiver by any party of any breach of any provision of this Agreement shall not be construed as a waiver of any subsequent breach of such provision or the breach of any other provision contained in this Agreement.

22. <u>No Third Party Contract Rights</u>. This Agreement is intended solely for the benefit of the parties hereto. Nothing herein shall be construed or deemed to create any rights or benefits of any third parties or third party beneficiaries.

23. <u>Headings</u>. The headings contained in this Agreement are inserted for convenience only. They do not constitute a part of this Agreement and in no way define, limit or describe the intent of this Agreement or any provisions hereof.

24. <u>Construction</u>. This Agreement shall not be construed against any party by reason of the fact that the party may be responsible for the drafting of this Agreement or any provision hereof.

25. <u>Knowledge of Rights and Duties</u>. Employee has carefully reviewed and completely read all of the provisions of this Agreement and understands and has been advised that he may consult with counsel of his choice for any explanation of his rights, duties, obligations and responsibilities under this Agreement, should Employee so desire. Employee acknowledges that he enters into this Agreement of his own free will.

[Signature pages follow]

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date and year first above written.

**KELLER ONE INC.**


John P. Rubright
President

Date:_____


**EMPLOYEE**


Andres M. Baquerizo

Date: SEPT 26/07


Approved by
**KELLER FOUNDATIONS, INC.**


Richard N. Yale
Chief Financial Officer

Date:_____

**Peitsch, David**

| | |
|---|---|
| **From:** | Edwin W. Hickey [ewh@hjfoundation.com] |
| **Sent:** | Friday, September 21, 2007 1:27 PM |
| **To:** | Yale, Rick |
| **Cc:** | Jeffrey Oshinsky; Lauren Young; Peitsch, David |
| **Subject:** | Agreement - AMB |
| **Attachments:** | Baquerizo Agreement.pdf |

Rick,

Attached is the signed agreement from Andres Baquerizo.

Thank you,

Ed

**HJ FOUNDATION**

Edwin W. Hickey
President
(305) 592-8181

9/21/2007

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date and year first above written.

### KELLER ONE INC.


John P. Rubright
President

Date:_____

### EMPLOYEE


Andres M. Baquerizo

Date:_____

Approved by
KELLER FOUNDATIONS, INC.


Richard N. Yale
Chief Financial Officer

Date:_____

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date and year first above written.

**KELLER ONE INC.**


John P. Rubright
President

Date:_____

**EMPLOYEE**


Andres M. Baquerizo

Date:_____

Approved by
KELLER FOUNDATIONS, INC.


Richard N. Yale
Chief Financial Officer

Date:_____