

fisherphillips.com

**Kansas City**
46 Penn Centre
4622 Pennsylvania Avenue
Suite 910
Kansas City, MO 64112
(816) 842-8770 Tel
(816) 842-8767 Fax

**Writer's Direct Dial:**
(816) 460-0208

**Writer's E-mail:**
lkbrown@fisherphillips.com

October 9, 2024

*Via Email Only*

Berkel & Company Contractors, Inc.
c/o Eric E. Packel, Esq.
POLSINELLI
Email: epackel@polsinelli.com

      Re:    *Keller North America, Inc.*

Dear Mr. Packel:

It is our understanding that you represent Berkel & Company Contractors, Inc. ("Berkel" or the "Company"). This correspondence to Berkel is therefore being directed through you. Please advise if you do not represent Berkel with respect to the issues raised herein, and we will send this correspondence directly to the Company. Otherwise, we assume that you will provide a copy of this correspondence, as well as its enclosures, to Berkel.

This law firm represents Keller North America, Inc. ("Keller"). We write to express Keller's serious concern that Berkel is in the midst of a creeping raid of Keller's workforce for the purpose of misappropriating Keller's confidential and proprietary information, its business relationships, and ultimately its revenues. Perhaps more disturbing, it appears that Berkel's efforts to target Keller's workforce and business relationships have been, and continue to be, aided and enhanced by the improper exploitation of information and relationships obtained by Keller employees.

The purpose of this letter is to (1) place Berkel on notice, to the extent the Company was not already aware, of the former Keller employees' obligations to Keller, and by extension, Berkel's responsibility to respect those obligations; (2) express Keller's serious concern that Berkel is in the midst of targeting key employees with a plan to aggressively expand its predatory hiring campaign; (3) obtain a credible and reliable written explanation from Berkel and the employees concerning the matters addressed herein; and (4) to obtain Berkel's unambiguous written commitment to stop and correct the unlawful conduct described herein.

### *Employees Targeted by Berkel To-Date*[1]

It is evident that Berkel is targeting certain key employees of Keller who – individually and collectively – are positioned to divert other members of Keller's workforce, along with Keller's intellectual property and business relationships. Each of the employees in question are bound by various agreements containing confidentiality, non-competition, customer non-solicitation, and/or employee non-solicitation obligations. It is our understanding that to date, Berkel has raided the following individuals from Keller:

- Andres Baquerizo, former Keller Vice President
- Nicholas Feldt, former Keller Senior Project Manager
- Frank Fonseca, former Senior Vice President
- Elison Garcia, former Keller Project Manager
- Matthew Hammett, former Keller Senior Engineer
- Joseph Mann, former Keller Branch Manager
- Justin McLaughlin, former Keller Engineer
- Dylan Mitchell, former Keller Project Engineer
- Jordan Moi, former Keller Senior Project Manager
- Ricardo Picayo, former Keller Operations Manager
- Bob Scott, Jr., former Keller Director of Engineering Services
- Michael Terry, former Keller Senior Vice President
- William Wright, former Keller Project Manager

It is further our understanding that each of these employees is currently performing the same or substantially similar work for Berkel as they did while they were employed with Keller.

There can be no dispute that the mass recruitment of members of Keller's engineering, project management, and leadership teams was done for the purpose of these individuals' drawing upon and using the confidential strategic planning information and trade secrets to which they were privy during their employment with Keller for the benefit of Berkel.

### *Berkel's Intent to Harm Keller*

Not counting the employees listed above, Berkel has targeted other Keller employees, each of whom is positioned to inflict additional harm on Keller. But evidence of Berkel's malicious intent does not end there. Recent statements from Keller's contacts make clear that Berkel intends to do more than simply hire qualified employees; Berkel is acting with an undeniable intent to reduce and/or eliminate Keller's position in the market in a thinly veiled effort to unfairly compete against Keller.

---

[1] We understand that you also represent Matthew Hammett, William Wright, and Joseph Mann. We do not currently have any information or knowledge relating to legal representation of the other employees identified in this section. As a courtesy and so that Berkel is on notice, we are enclosing with this correspondence the letters that were sent to Andres Baquerizo, Nicholas Feldt, Elison Garcia, Justin McLaughlin, Dylan Mitchell, Jordan Moi, Ricardo Picayo, and Bob Scott, Jr. reminding them of their post-employment contractual obligations to Keller.

## *Keller's Demands for Action and Assurances*

Keller will not hesitate to vigorously defend its reputation and good will in the market, protect its confidential and proprietary information, and prevent further predatory hiring practices by Berkel. Keller also places great importance on its former employees' compliance with post-employment confidentiality, non-compete, and non-solicitation covenants.

For that reason, Keller asks that Berkel *and* all the former Keller employees take each of the following steps and provide each of the following assurances and information in writing:

1.   Immediately provide to me as Keller's representative all documents (in any form, written or electronic) that the employees obtained as a result of their employment with Keller, and all documents or information derived therefrom (collectively, the "Records"). This includes without limitation any such Records that the former employees or Berkel have in their possession, custody, or control, including any Records that they have provided to others, transferred to another device, or otherwise transmitted in any way.

2.   In the event that any of the former employees or Berkel have any Records stored in an electronic format (such as email accounts, portable storage devices and cloud storage accounts), Keller requires that the former employees and Berkel immediately (a) cease using or accessing such Records; (b) not allow any third party to use or access the Records; (c) ensure that all such Records are preserved and not deleted or altered in any way; and (d) notify us so that arrangements may be made to remove such Records existing in an electronic format without destroying or altering the integrity of the Records as potential evidence in a lawsuit against the former employees and/or Berkel.

3.   Identify in writing all persons (at Berkel or otherwise) with whom the former employees have shared Records or their contents.

4.   With respect to each former Keller employee, please describe in writing the role that each such former Keller employee played in Berkel's efforts to employ any of the other Keller employees and/or any other Keller employees.  Please include in your description a statement as to (a) whether any of the former Keller employees interviewed, or participated in the interview of other Keller employees and/or employees; (b) whether any of the former Keller employees were consulted by Berkel in any way concerning other employees/employees; and (c) whether any of the former Keller employees offered information of any type to Berkel concerning other employees/employees (including without limitation information concerning the other employees' identities, skill sets, capabilities, performance at Keller, compensation, etc.). A review by Berkel of the former Keller employees' email accounts and their text messages may be appropriate.

5.   Provide an unambiguous written commitment to stop and correct the unlawful conduct described herein.

6.     Take steps necessary to ensure that any and all documents related to the matters addressed herein (including with regard to paragraphs 1 and 2 above) are preserved and not deleted or altered in any way so that they will be available as evidence **(this demand is imperative; neither Berkel nor any of the employees identified herein may destroy any evidence related to the matters addressed in this letter).** Please provide a written assurance confirming that such steps have been taken.

    a.    Specifically, we ask that appropriate steps be taken to preserve all paper, electronic, or other records, including, but not limited to, emails, text messages, or other communications, that relate in any way to: (i) Keller; (ii) any employee's consideration and acceptance of employment with Berkel; (iii) any efforts to recruit Keller employees; (iv) Keller customers; and (v) any use or disclosure of the Keller's Confidential Information, trade secrets, or property.

    b.    This preservation obligation extends to any and all hard copy documents and electronic storage devices, including computers, smart phones, tablets, USB drives, and other devices (whether owned by the employees identified in this letter or Berkel), as well as emails, instant messages, documents, or other records stored in the cloud or on third-party devices, including LinkedIn, Gmail, Yahoo, iCloud, Slack, Teams, WhatsApp, or other third-party email or messaging services.

It is vital that Berkel and the former employees keep in mind that their failure to preserve evidence may result in evidentiary or other sanctions against them in any litigation arising from this dispute.

The urgency of the matters addressed in this letter cannot be overstated. The activities described above implicate serious issues and require a timely, candid, and satisfactory explanation coupled with urgent corrective action. It should be understood that the prospects for an amicable resolution will be greatly enhanced by full disclosure. This letter does not constitute a waiver or limitation of Keller's rights or claims under any applicable contract, statute, law, or regulation, all of which are expressly reserved.

Sincerely,

Laura Bailey Brown
For FISHER & PHILLIPS LLP



fisherphillips.com

**Kansas City**
46 Penn Centre
4622 Pennsylvania Avenue
Suite 910
Kansas City, MO 64112
(816) 842-8770 Tel
(816) 842-8767 Fax

**Writer's Direct Dial:**
(816) 460-0208

**Writer's E-mail:**
lkbrown@fisherphillips.com

October 9, 2024

***Via FedEx and Email***

Andres Baquerizo
3905 W. Gardenia Avenue
Weston, Florida 33332
Email: andresbaquerizo@yahoo.com

      Re:    *Contractual Obligations to Keller North America, Inc.*

Dear Mr. Baquerizo:

Please be advised that this law firm represents the interests of your former employer, Keller North America, Inc. ("Keller" or the "Company"). We write to remind you of your continuing legal obligations to Keller under the employment agreement ("Agreement") that you entered into for the benefit of Keller and to demand your immediate action and assurances. ***If you are represented by legal counsel with respect to the matters contained in this letter, I ask that you provide this letter to your attorney immediately.***

While working for Keller, you had significant and direct access to and worked with confidential, proprietary, and trade secret information, including highly confidential information relating to the Company's clients and business. Your employment with Keller was conditioned on your promise to comply with various obligations during and after your employment that are designed to protect the Company's confidential information and trade secrets. Those promises were set out most recently in the enclosed Agreement, which you entered into on September 21, 2007.

### *Your Confidentiality Obligation*

In your Agreement, you acknowledge that, in the course of your employment with the Company, you had access to, were entrusted or became acquainted with, and acquired knowledge of confidential, trade secret, and/or proprietary information of the Company and/or its clients. *See* Agreement, Section 2. You further agreed to take all steps necessary, and all steps requested by the Company, to ensure that the Confidential Business Information, as that term is defined within the Agreement, is kept secret and confidential and for the sole use and benefit of the Company. *See* Agreement, Section 3.a. You further are prohibited from directly or indirectly using, publishing, disseminating, distributing, or otherwise disclosing any Confidential Business Information to any other person, firm, corporation, partnership, association, or other entity. *See* Agreement, Section 3.c.

### *Your Obligation Not to Compete*

For a period of two years after the end of your employment, you are prohibited from, directly or indirectly, whether as an employee, employer, officer, director, operator, agent, independent contractor, consultant, stockholder, partner, owner investor, advisor, joint venturer, or otherwise, competing with the Company by engaging in the construction of deep foundations, including but not limited to augered piling, excavation shorting, and vibro compaction or replacement, in the State of Florida. *See* Agreement, Section 5.

### *Your Obligation Not to Solicit Employees*

For a period of two years after the end of your employment, you are prohibited from soliciting, hiring, retaining, engaging, inducing or attempting to induce away, or aiding, assisting, or abetting any person or entity in soliciting, hiring, retaining, engaging, inducing or attempting to induce away from their employment any then current officer, director, employee, independent contractor, consultant, agent, or other personnel or representative of the Company. *See* Agreement, Section 6.  You are further prohibited from disrupting, impairing, damages, or interfering with any relationship between the Company and any of its current or former officers, directors, employees, independent contractors, consultants, agents, or other personnel or representatives.  *See* Agreement, Section 6.

### *Your Obligation Not to Solicit Customers*

For a period of two years after the end of your employment, you are prohibited from soliciting or providing any actual or identifiable prospective client or customer of the Company any products or services that compete with the products and services offered by the Company. *See* Agreement, Section 6.

### *Requested Assurances*

We have received information that you are currently working for Berkel and Company Contractors, Inc., in competition with Keller. We also have reason to believe that you may have violated the restrictive covenants in your Agreement. Please know that Keller takes these agreements very seriously.  Thus, the purpose of this letter is to demand that you immediately cease and desist all violations of your Agreement. Should you breach your obligations, the Company will take all measures available to enforce its rights and protect its legitimate interests under the Agreement.

Because of the potential for litigation in this case, please understand that you should immediately take steps to prevent the destruction of potentially relevant evidence.  In particular, we ask that you preserve all computers, handheld electronic devices (including phones, tablets, etc.) and data storage media, including both internal and external computer hard drives and cloud storage, utilized by you to avoid the deletion, destruction, or modification of any electronically stored information, including emails, that in any way mentions or relates to Keller, that was sent from/to Keller, or that contains any of Keller's customer or business information.  If you fail to prevent the destruction or deletion of this information, we will take the position you have intentionally destroyed relevant evidence.

Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any rights or remedies, either at law or in equity, in connection with any of the matters raised in this letter, all of which are expressly reserved.

We look forward to your cooperation.  Please contact me directly if you have any questions about this matter.

Sincerely,

Laura Bailey Brown
For FISHER & PHILLIPS LLP

cc:  Charles Caulkins, Esq.

## CONFIDENTIALITY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

**THIS CONFIDENTIALITY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT** ("Agreement") is entered into this __21__ day of September, 2007, by and between Keller One Inc., its successors, subsidiaries, affiliates, related entities and assigns ("the Company"), and Andres M. Baquerizo ("Employee"), who is currently employed by, or who has accepted employment with, the Company.

### WITNESSETH:

**WHEREAS**, the Company is a leading deep foundation contractor in Florida that, through innovative techniques, evaluates and assesses construction and engineering alternatives for clients in an effort to maximize end-product structural soundness, safety and efficiency, and

**WHEREAS**, Employee is employed by, or has accepted employment with, the Company; and

**WHEREAS**, in the course of Employee's employment by the Company, the Company may disclose to Employee, and Employee may have access to, Confidential Business Information, as that term is defined below; and

**WHEREAS**, the nature of the Company's business requires that Employee carry out his duties in a confidential manner, and the Company desires to protect its Confidential Business Information, as that term is defined below, and other legitimate business interests of the Company during Employee's employment and thereafter; and

**WHEREAS**, Employee agrees and acknowledges that the Company would not have agreed to employ, or continue to employ, Employee absent the covenants and restrictions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the promises and covenants set forth in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and as a condition to, and in consideration of, the employment of Employee by the Company, the parties do hereby agree as follows:

1. If Employee remains employed by the Company from October 1, 2007 to October 1, 2008 then the Company shall pay Employee a bonus of Fifty Thousand Dollars ($50,000.00) on or before October 17, 2008..

1

2.  <u>Confidential Business Information Defined</u>.  Employee understands and acknowledges that, in the course of his employment with the Company, he will have access to, be entrusted or become acquainted with, and may acquire knowledge of confidential, trade secret and/or proprietary information of the Company and/or its clients (all of which is hereinafter referred to as "Confidential Business Information"). By way of illustration only, and not limitation, Confidential Business Information may include information regarding: (a) specialized computer applications and programs used by the Company in conjunction with the engineering and construction services provided to the Company's clients; (b) equipment specifications, plans, designs, and concepts; (c) discoveries, improvements, product plans, research and development information and efforts, formulas, compilations, and inventions; (d) pricing policies, profit margins, and pricing methods; (e) methods of operation, business plans, and expansion plans; (f) mailing lists, customer lists, and lists of and information relating to current, former and prospective clients and accounts; (g) marketing, advertising, public relations and/or promotional strategies, programs, plans and methods; (h) terms of contracts or proposals between the Company and its clients, vendors and/or suppliers; (i) business and sales forecasts, market analyses, costs, sales and revenue reports, budgets, other financial data which relates to the management and operation of the Company and its products and services, and other analyses not publicly disclosed; (j) employment lists, and salary, compensation and other information regarding employees, agents, independent contractors, consultants, vendors and suppliers of the Company; (k) internal procedures, programs, reports and forms of the Company; and (l) other confidential, trade secret and/or proprietary information that allows the Company to compensate successfully and that is not generally known to the public.

3.  <u>Agreement to Maintain Confidentiality</u>.

    a.  Employee acknowledges that the Company's Confidential Business Information is, and has been, the subject of efforts taken by the Company that are reasonable under the circumstances to maintain its confidentiality.  Employee agrees to take all steps necessary, and all steps requested by the Company, to ensure that the Confidential Business Information is kept secret and confidential and for the sole use and benefit of the Company and to comply with all applicable policies and procedures of the Company regarding the storage and security of all Confidential Business Information, whether in hard copy form or stored on computer disks or other electronic media.

    b.  Employee acknowledges that the Company's Confidential Business Information is a special and unique asset of the Company and derives independent economic value, actual or potential, from not being generally known by the public or by other persons or entities that can

2

obtain economic value from its disclosure. Employee further agrees that the disclosure of any Confidential Business Information to competitors of the Company, both during and after his employment with the Company, or use of any Confidential Business Information for Employee's own benefit, would constitute misappropriation of the Confidential Business Information.

    c.   Employee covenants and agrees that he will not use any of the Company's Confidential Business Information for any purpose other than in the course and scope of his employment with the Company and for the exclusive benefit of the Company. Except for disclosure in the course and scope of his employment with the Company and on behalf of the Company, Employee will never at any time, either during or after his employment with the Company, directly or indirectly use, publish, disseminate, distribute or otherwise disclose any Confidential Business Information to any other person, firm, corporation, partnership, association or other entity.

4.   <u>Ownership and Return of Documents</u>. Employee acknowledges that all documents, records and materials that he prepares, and Confidential Business Information that he may have access to, may be given or entrusted to him, or that he may acquire knowledge of in the course of his employment with the Company, are and shall remain the sole property of the Company. In the event that Employee's employment with the Company terminates for any reason, or upon demand, Employee agrees to immediately return or turn over to the Company all Confidential Business Information (and any copies thereof) in his possession, custody or control, as well as any documents, records, notes, or other work product, materials, information and other property in his possession, custody or control which is in any way connected with or derived from his services to, or affiliation with, the Company.

5.   <u>Covenant Not to Compete</u>. During the term of Employee's employment by the Company and for a period of two years after the termination or separation of Employee's employment with the Company for any reason, Employee agrees that he will not individually or jointly, directly or indirectly, whether as an employee, employer, officer, director, operator, agent, independent contractor, consultant, stockholder, partner, owner, investor, advisor, joint venturer or otherwise, compete with the Company by engaging in the construction of deep foundations, including but not limited to augered piling, excavation shoring and vibro compaction or replacement, in the State of Florida.

6.   <u>Non-Solicitation of Employees</u>. Employee agrees that during his employment with the Company and for a period of two years after the termination of Employee's employment with the Company for any reason, Employee will not, directly or indirectly, himself or through any individual entity: (1) solicit,

3

hire, retain, engage, induce or attempt to induce away, or aid, assist or abet any person or entity in soliciting, hiring, retaining, engaging, inducing or attempting to induce away from his/her employment or association with the Company any then current officer, director, employee, independent contractor, consultant, agent, or other personnel or representative of the Company, or (ii) otherwise disrupt, impair, damage or interfere with any relationship between the Company and any of its current or former officers, directors, employees, independent contractors, consultants, agents, or other personnel or representatives.

7. <u>Non-Solicitation of Customers/Clients</u>. During Employee's employment with the Company and for a period of two years following the termination or separation of Employee's employment with the Company for any reason, Employee agrees not to, either individually or jointly, directly or indirectly, either as an employee, employer, operator, agent, independent contractor, owner, consultant, partner, investor or otherwise, call upon, solicit or provide to any actual or identifiable prospective client or customer of the Company any products or services that compete with the products and services offered by the Company.

8. <u>Reasonable Restrictions</u>. Employee acknowledges and agrees that the Company regularly conducts business in the State of Florida, and has plans to extend its business even further throughout the State of Florida. Accordingly, Employee agrees that the covenants set forth in this Agreement are reasonable and necessary to protect the Company's legitimate business interests, including, without limitation, the Company's valuable and confidential business information, the Company's trade secrets, the Company's proprietary information, the Company's customer relationships, the Company's substantial relationships with identifiable prospective customers, and the Company's goodwill. Employee also agrees that the two year duration of these covenants is reasonable and that the enforcement of the covenants, whether by injunctive relief, damages, or otherwise, is in no way contrary to the public health, safety and welfare.

9. <u>Intellectual Property</u>. Any and all ideas, inventions, improvements, works of authorship, data processes, formulas, computer software programs and discoveries, whether or not patentable or eligible for copyright, trademark or other analogous protection, in any such case solely or jointly made, developed, discovered, conceived or reduced to practice by the Company (whether at the request or suggestion of any officer or employee of the Company or otherwise, whether alone or in conjunction with others, and whether during regular hours of work or otherwise) during the term of the Employee's employment with the Company, which arise from the fulfillment of the Employee's duties and which may be directly or indirectly useful in the business of the Company or its affiliates shall be promptly and fully disclosed in writing to the President of the Company. The Employee's entire right, title

4

and interest (both domestic and foreign) in and to the foregoing shall become the sole property of the Company. All papers, drawings, models, data and other materials relating to any of the foregoing shall be included in the definition of Confidential Business Information, and shall remain the sole property of the Company, and the Employee shall return to the Company all such papers, and all copies thereof, including all originals and copies contained in the computer hard drives or other electronic or machine readable format, upon the earlier of the Company's request therefore or the cessation of the Employee's employment with the Company. The Employee shall execute, acknowledge and deliver to the Company any and all further assignments, contracts or other instruments the Company deems necessary or expedient, without further compensation, to carry out and effectuate the intents and purposes of this Agreement and to vest in the Company each and all of the rights granted or stated to be granted to the Company.

In the event the Company is unable, after reasonable effort, to secure the Employee's signature on any letter patent, copyright or other analogous protection relating to the foregoing whether because of the Employee's physical or mental incapacity or for any other reason whatsoever, the Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as his agent and attorney-in-fact, to act for and on his behalf and stead to execute and file any such application(s) and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent, copyright or other analogous protection relating to the foregoing with the same legal force and effect as if executed by the Employee. The Employee represents and warrants to the Company, that except as expressly set forth in <u>Exhibit A</u> attached hereto, there is no existing intellectual property that the Employee desires to remove from the operation of this Agreement and the Employee hereby releases the Company from any and all claims by the Employee by reason of any use by the Company of such intellectual property.

10. <u>Specific Performance; Injunction</u>.

    a.  Employee understands that if he violates any of the terms of this Agreement while employed by the Company, Employee will be subject to disciplinary action up to and including immediate termination of employment.

    b.  Employee further agrees and acknowledges that the covenants and undertaking contained in this Agreement relate to matters that are of a special, unique and extraordinary character and that a violation or breach by Employee of any of the covenants and undertakings contained in this Agreement will cause irreparable harm or damage to the Company, the monetary amount of which would be difficult, if not impossible, to ascertain and which cannot be adequately compensated. As a result, Employee agrees that, in addition to any other available

5

remedies, the Company shall have the right to seek and obtain specific performance, an injunction, restraining order or other equitable relief from a court of competent jurisdiction to enforce this Agreement in the event of an actual, potential or threatened violation or breach of any provision of this Agreement. Without regard to whether the Company seeks or is granted any such equitable relief, the Company will not be prejudiced in its right to seek and be awarded damages for the violation or breach of any provision of this Agreement. Without regard to whether the Company seeks or is granted any such equitable relief, the Company will not be prejudiced in its right to seek and be awarded damages for the violation or breach of any provision of this Agreement.

c.   Employee understands that the rights and remedies provided for in this Agreement are cumulative and will be in addition to any rights and remedies otherwise available to the Company under applicable law. Employee also agrees that the existence of any claim or cause of action that he may have against the Company, whether predicated on this Agreement or otherwise, shall not constitute a valid defense to the enforcement of the covenants and undertakings contained in this Agreement.

d.   Employee further agrees and acknowledges that should legal proceedings be initiated by the Company to enforce the restrictive covenants contained in Sections 5, 6 and/or 7 of this Agreement, the commencement of the two year duration of said restrictive covenants will commence on the date of the entry of an order granting the Company injunctive, monetary or other relief from Employee's actual, potential or threatened violation or breach of said restrictive covenants will remain in effect for the next succeeding two years. Employee acknowledges and agrees that the purpose and effect of the restrictive covenants contained in Sections 5, 6 and 7 of this Agreement would be frustrated by measuring the two year duration of said restrictive covenants from the termination or separation of Employee's employment where Employee fails to honor the restrictive covenants contained in Sections 5, 6 and/or 7 of this Agreement until directed to do so by court order.

e.   This Agreement is intended to benefit the Company and any parent, subsidiary, related entity, and affiliate. Accordingly, this Agreement and the restrictive covenants herein may be enforced by the Company and any parent, subsidiary, related entity, and/or affiliate. The Agreement and its restrictive covenants may be assigned by the Company without the knowledge or consent of the Employee, and the Agreement and its restrictive covenants may be enforced by any assignee of, or successor to, the rights set forth in this Agreement.

11. <u>Maximum Restrictions of Time, Scope and Geographical Area</u>.  Although the restrictions in this Agreement regarding competition, solicitation and breach of confidentiality are considered by the parties to be reasonable for the purposes of protecting the value intended to be received by the Company from this Agreement with Employee, if any such restriction is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time, or over too broad a range of activities, or in too large a geographic area, or otherwise, then such restriction shall be interpreted only to extend over the maximum period of time, range of activities, geographic area, or other terms, as to which it may be enforceable.  The parties agree that the court making the determination of invalidity or unenforceability shall have the power to reduce the scope, duration, or geographic area, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision, and this Agreement shall be enforceable as so modified after the expiration of the time within which the judgment may be appealed.

12. <u>Notices</u>.  Employee agrees and acknowledges that during his employment with the Company and for a period of two years following the termination or separation of Employee's employment with the Company for any reason, Employee will inform each prospective new employer he may have, prior to accepting employment, of the existence of this Agreement, and he shall provide each prospective employer with a copy of this Agreement.  Employee also agrees and acknowledges that the Company has the right to independently contact any potential or actual future employer of Employee to notify the future employer of Employee's obligations under this Agreement and provide such future employer with a copy of this Agreement.  The Company shall also be entitled to notify such actual or potential future employer of the Company's understanding of the requirements of this Agreement and what steps, if any, the Company intends to take to ensure compliance with or enforcement of this Agreement.

13. <u>Agreement Not to Be Construed as Creating a Contract of Employment</u>.  Employee understands and acknowledges that Employee's execution of this Agreement will in no way be construed as creating a contract of employment between the Company and Employee for any specific period of time.  Unless expressly agreed upon in writing between Employee and the Company's President, Employee is and shall remain an "at-will" employee.  This means that, unless expressly agreed upon in writing between Employee and the Company's President, either the Company or Employee may terminate the employment relationship at any time, for any reason or no reason, and with or without cause and with or without notice.

14. <u>Previously Executed Employment Agreements, Restrictive Covenants, and Confidentiality/Trade Secret Agreements</u>.  Employee understands and acknowledges that any Employment Agreements, restrictive covenants

7

(including, without limitation, non-compete and non-solicitation covenants), and agreements governing or addressing the maintenance, retention, disclosure or return of confidential/trade secret information executed prior to the date of this Agreement (collectively "previously executed agreements") shall remain in full force and effect to the fullest extent permitted under law. To the fullest extent possible, all previously executed agreements shall be read and interpreted so not to conflict with any terms of this Agreement. If any terms of any previously executed agreements cannot reasonably be read and interpreted so not to conflict with this Agreement, then the terms, conditions, and provisions of this Agreement shall prevail and control over the conflicting terms of the previously executed agreements.

15. Severability.  Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, with invalidating the remainder of such provisions or the remaining provisions of this Agreement.

16. Attorney's Fees and Costs.  In any action to enforce any provisions or covenants contained within this Agreement, the prevailing party shall be entitled to recover its attorney's fees and costs incurred at both the trial court and appellate court levels.

17. Compete Agreement.  This Agreement constitutes the entire agreement between the parties and supersedes all other prior agreements and understandings, both written and oral, with respect to the subject matter hereof.

18. Counterparts.  This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement and each of which shall be deemed an original.

19. Successors and Assigns; Assignment.  This Agreement and its restrictive covenants may be assigned by the Company without the knowledge or consent of the Employee, and the Agreement and its restrictive covenants may be enforced by any assignee of, or successor to, the rights set forth in this Agreement. Further, the Agreement shall survive any sale of assets, merger, consolidation, or other change in corporate structure.

20. Choice of Law; Venue.  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Florida. The parties hereto agree that all actions and proceedings relating hereto shall be litigated in a competent court of jurisdiction in Miami-Dade County, Florida.

21. <u>Amendment and Waiver</u>.  This Agreement may not be changed or amended except in writing signed by the parties.  The waiver by any party of any breach of any provision of this Agreement shall not be construed as a waiver of any subsequent breach of such provision or the breach of any other provision contained in this Agreement.

22. <u>No Third Party Contract Rights</u>.  This Agreement is intended solely for the benefit of the parties hereto.  Nothing herein shall be construed or deemed to create any rights or benefits of any third parties or third party beneficiaries.

23. <u>Headings</u>.  The headings contained in this Agreement are inserted for convenience only.  They do not constitute a part of this Agreement and in no way define, limit or describe the intent of this Agreement or any provisions hereof.

24. <u>Construction</u>.  This Agreement shall not be construed against any party by reason of the fact that the party may be responsible for the drafting of this Agreement or any provision hereof.

25. <u>Knowledge of Rights and Duties</u>.  Employee has carefully reviewed and completely read all of the provisions of this Agreement and understands and has been advised that he may consult with counsel of his choice for any explanation of his rights, duties, obligations and responsibilities under this Agreement, should Employee so desire.  Employee acknowledges that he enters into this Agreement of his own free will.

[Signature pages follow]

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date and year first above written.

### KELLER ONE INC.

John P. Rubright
President

Date:_____

### EMPLOYEE

Andres M. Baquerizo

Date:___SEPT 25/07_____

Approved by
**KELLER FOUNDATIONS, INC.**

Richard N. Yale
Chief Financial Officer

Date:_____

**Peitsch, David**

| | |
|---|---|
| **From:** | Edwin W. Hickey [ewh@hjfoundation.com] |
| **Sent:** | Friday, September 21, 2007 1:27 PM |
| **To:** | Yale, Rick |
| **Cc:** | Jeffrey Oshinsky; Lauren Young; Peitsch, David |
| **Subject:** | Agreement - AMB |
| **Attachments:** | Baquerizo Agreement.pdf |

Rick,

Attached is the signed agreement from Andres Baquerizo.

Thank you,

Ed

**HJ FOUNDATION**

Edwin W. Hickey
President
(305) 592-8181

9/21/2007

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date and year first above written.

**KELLER ONE INC.**


John P. Rubright
President

Date:_____


**EMPLOYEE**


Andres M. Baquerizo

Date:_____


Approved by
KELLER FOUNDATIONS, INC.


Richard N. Yale
Chief Financial Officer

Date:_____

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement as of the date and year first above written.

**KELLER ONE INC.**


John P. Rubright
President

Date:_____

**EMPLOYEE**


Andres M. Baquerizo

Date:_____


Approved by
KELLER FOUNDATIONS, INC.


Richard N. Yale
Chief Financial Officer

Date:_____



fisherphillips.com

**Kansas City**
46 Penn Centre
4622 Pennsylvania Avenue
Suite 910
Kansas City, MO 64112
(816) 842-8770 Tel
(816) 842-8767 Fax

**Writer's Direct Dial:**
(816) 460-0208

**Writer's E-mail:**
lkbrown@fisherphillips.com

October 9, 2024

***Via FedEx and Email***

Nicholas Feldt
13875 SW 80th Street
Miami, Florida 33183
Email: nrfeldt@aol.com

   Re:  *Contractual Obligations to Keller North America, Inc.*

Dear Mr. Feldt:

   Please be advised that this law firm represents the interests of your former employer, Keller North America, Inc. ("Keller" or the "Company"). We write to remind you of your continuing legal obligations to Keller under the employment agreement ("Agreement") that you entered into for the benefit of Keller and to demand your immediate action and assurances. ***If you are represented by legal counsel with respect to the matters contained in this letter, I ask that you provide this letter to your attorney immediately.***

   While working for Keller, you had significant and direct access to and worked with confidential, proprietary, and trade secret information, including highly confidential information relating to the Company's clients and business. Your employment with Keller was conditioned on your promise to comply with various obligations during and after your employment that are designed to protect the Company's confidential information and trade secrets. Those promises were set out most recently in the enclosed Agreement, which you signed with an effective date of September 30, 2019.

***Your Obligation Not to Compete***

   For a period of one year after the end of your employment, you are prohibited from working for any company, entity, or person that engages in Keller's Business, as that term is defined in the Agreement, in (i) Miami-Dade County, Florida; (ii) Broward County, Florida; and (iii) Palm Beach County, Florida. *See* Agreement, Section 3.1(a). You are further prohibited, in the same area, from performing services as an independent contractor, consultant, agent, partner, joint venturer, shareholder, or otherwise for any company, entity, or person that engages in Keller's Business. *See* Agreement, Section 3.1(b).

### *Your Obligation Not to Solicit or Divert Customers*

For a period of one year after the end of your employment, you are prohibited from "soliciting or diverting away, or attempting to solicit or divert, the business of any entity or person who is a current, former, or potential customer, supplier, or referral source of the Company." *See* Agreement, Section 3.1(c).

### *Your Obligation Not to Solicit or Recruit Employees*

For a period of one year after the end of your employment, you are prohibited from "soliciting or recruiting, or attempting to solicit or recruit, for [yourself] or for any organization with which [you are] connected, any employee of the Company or any persons who, within one (1) year of such solicitation or recruitment, was employed by the Company." *See* Agreement, Section 3.1(d).

### *Requested Assurances*

We have received information that you are currently working for Berkel and Company Contractors, Inc., which is engaged in the same Business as Keller and is a competitor of the Company. We also have reason to believe that you may have violated the restrictive covenants in your Agreement. Please know that Keller takes these agreements very seriously. Thus, the purpose of this letter is to demand that you immediately cease and desist all violations of your Agreement. Should you breach your obligations, the Company will take all measures available to enforce its rights and protect its legitimate interests under the Agreement.

Because of the potential for litigation in this case, please understand that you should immediately take steps to prevent the destruction of potentially relevant evidence. In particular, we ask that you preserve all computers, handheld electronic devices (including phones, tablets, etc.) and data storage media, including both internal and external computer hard drives and cloud storage, utilized by you to avoid the deletion, destruction, or modification of any electronically stored information, including emails, that in any way mentions or relates to Keller, that was sent from/to Keller, or that contains any of Keller's customer or business information. If you fail to prevent the destruction or deletion of this information, we will take the position you have intentionally destroyed relevant evidence.

Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any rights or remedies, either at law or in equity, in connection with any of the matters raised in this letter, all of which are expressly reserved.

We look forward to your cooperation. Please contact me directly if you have any questions about this matter.

Sincerely,

Laura Bailey Brown
For FISHER & PHILLIPS LLP

cc: Charles Caulkins, Esq.

## NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Non-Competition and Non-Solicitation Agreement ("***Agreement***") is made and entered into on August 5, 2019 (the "***Effective Date***") by and between HJ Foundation Company (the "***Company***") and Nicholas Feldt ("***Employee***"). The Company and the Employee (together, the "***Parties***"), intending to be legally bound, agree as follows:

1.    **DEFINITIONS.**

In addition to terms defined above and elsewhere in this Agreement, the following terms shall have the following meanings when used in this Agreement:

1.1.    ***"Restricted Area"*** shall mean (i) Miami-Dade County, Florida, (ii) Broward County, Florida, and (iii) Palm Beach County, Florida.

1.2.    ***"Restricted Period"*** shall mean the one-year period following the termination of the Employee's employment with the Company for any of the reasons set forth in Section 3.4 below. The Restricted Period shall be tolled during (and shall be deemed automatically extended by) any period of time in which the Employee is in violation of the terms of Section 3 below.

1.3.    ***"Cause"*** shall mean: (a) poor performance of assigned duties or responsibilities; (b) willful misconduct; (c) fraud; (d) breach of fiduciary duty; (e) deliberate and material refusal to perform assigned duties or responsibilities or to comply with reasonably-established policies of the Company; or (f) inability to perform the essential functions of the position due to a dependence on any addictive substance.

1.4.    ***"Competitor"*** shall mean a company, entity, or person that engages in the Business.

2.    **EMPLOYEE'S ACKNOWLEDGMENTS.**

2.1.    Employee acknowledges that: (a) Employee has received, and has become familiar with, the Company's trade secrets, valuable confidential business information, and/or valuable professional information; (b) the Employee has developed substantial relationships with specific prospective or existing customers, clients, and/or vendors of the Company; and/or (c) the Employee has received extraordinary and/or specialized training from the Company.

2.2.    Employee further acknowledges that: (a) Employee is an at-will employee of the Company; (b) the Company is engaged in the business of providing ground improvement, foundation drilling, earth retention, groundwater control, and/or other geotechnical services (collectively, the "***Business***"); (c) Employee has carefully read this Agreement, fully understands the restraints imposed upon the Employee by this Agreement, and voluntarily agrees to its terms and conditions; (d) Employee was not coerced to sign this Agreement and was not under duress at the time Employee signed this Agreement; (e) prior to signing this Agreement, Employee had adequate time to consider entering into this Agreement, including, without limitation, the opportunity to discuss the terms and conditions of this Agreement, as well as its legal

v06/12/2019

Employee's Initials __NF__

1

consequences, with an attorney of Employee's choice; and (f) given the nature and scope of the Company's Business, each and every restraint imposed by this Agreement (*see infra* Section 3) is reasonable with respect to subject matter, time period, and geographical area.

## 3.    NON-COMPETITION AND NON-SOLICITATION.

**3.1.**    In consideration of Employee's continued participation in the Company's discretionary bonus program and Employee's continued at-will employment with the Company, Employee hereby agrees to refrain from the following activities, directly or indirectly, while employed by the Company and during the Restricted Period:

      (a)    within the Restricted Area, becoming employed by any Competitor;

      (b)    within the Restricted Area, performing services as an independent contractor, consultant, agent, partner, joint venturer, shareholder, or otherwise for any Competitor;

      (c)    soliciting or diverting away, or attempting to solicit or divert, the business of any entity or person who is a current, former, or potential customer, supplier, or referral source of the Company; and

      (d)    soliciting or recruiting, or attempting to solicit or recruit, for the Employee or any organization with which the Employee is connected, any employee of the Company or any persons who, within one (1) year of such solicitation or recruitment, was employed by the Company.

**3.2.**    The Employee acknowledges that a violation by the Employee of any of the covenants contained in this Section 3 would cause irreparable damage to the Company in an amount that would be material but not readily ascertainable, and that any remedy at law (including the payment of damages) would be inadequate.  Accordingly, the Employee agrees that, notwithstanding any provision of this Agreement to the contrary, the Company shall be entitled to injunctive relief (including temporary restraining orders, preliminary injunctions, and/or permanent injunctions) in any court of competent jurisdiction for any actual or threatened breach of any of the covenants set forth in this Section 3 in addition to any other legal or equitable remedies it may have.  The preceding sentence shall not be construed as a waiver of the rights that the Company may have for damages under this Agreement or otherwise, and all of the Company's rights shall be unrestricted.

**3.3.**    If any portion of this Section 3 is held to be unreasonable, unenforceable, arbitrary, or against public policy, then such portion shall be considered divisible as to time, geographical area, and prohibited activities.  If any court of competent jurisdiction determines the specified time period, geographic area, or specified prohibited activities applicable to this Section 3 to be unreasonable, arbitrary, or against public policy, then a lesser time period, geographic area, or prohibited activities which are determined to be reasonable, non-arbitrary, and not against public policy may be enforced against Employee.

v06/12/2019

Employee's Initials __NF__

**3.4.** This Agreement, including the terms in this Section 3, applies only if: (a) the Employee terminates his or her employment with the Company for any reason; or (b) if the Company terminates the Employee for Cause.

**3.5.** This Agreement, including the terms in this Section 3, shall become null and void if, during the term of Employee's employment with the Company, the Company decreases or lowers Employee's base salary, job title, and/or job duties.

## 4. CONSIDERATION.

In consideration for the Employee's agreement to comply with this Agreement and the covenants in Section 3 above, the adequacy of which is hereby acknowledged by the Employee, the Company will continue Employee's participation in the Company's discretionary bonus program and continue Employee's at-will employment with the Company.

## 5. MISCELLANEOUS.

**5.1.    Entire Agreement; Modifications.** This Agreement supersedes all prior agreements between the Parties with respect to its subject matter and constitutes a complete and exclusive statement of the terms of the agreement between the Parties with respect to its subject matter. This Agreement may not be amended, supplemented, or otherwise modified except by a written agreement executed by the Parties.

**5.2.    Assignments.** The Company may assign this Agreement, or any of its rights and duties hereunder, without the Employee's consent, to any subsidiary or affiliate of the Company or to any person or entity which acquires all, or substantially all, of the assets or business of the Company or any of the Company's divisions.

**5.3.    Governing Law; Jurisdiction.** This Agreement will be governed by and construed under the laws of the State of Florida without regard to conflicts of laws principles that would require the application of any other law. Any action or proceeding arising out of or relating to this Agreement may be brought in the courts of the State of Florida; or, if there is a basis for jurisdiction, such actions may be brought in the United States District Court for the Southern District of Florida. The Parties irrevocably submit to the jurisdiction of such courts in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

[SIGNATURES ON THE FOLLOWING PAGE]

v06/12/2019

Employee's Initials __NF__

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the Effective Date.

**HJ FOUNDATION COMPANY**          **Nicholas Feldt**

By: _____          _____  9/11/19

Name: _MARK  M,  DEVANEY_

Title: _DIR  PROJ  MGMT_

[END OF SIGNATURE PAGE]

v06/12/2019



fisherphillips.com

**Kansas City**
46 Penn Centre
4622 Pennsylvania Avenue
Suite 910
Kansas City, MO  64112
(816) 842-8770 Tel
(816) 842-8767 Fax

**Writer's Direct Dial:**
(816) 460-0208

**Writer's E-mail:**
lkbrown@fisherphillips.com

October 9, 2024

***Via FedEx and Email***

Elison Garcia
501 NW 99 Way
Hollywood, Florida 33024
Email: eflgarcia23@gmail.com

      Re:    *Contractual Obligations to Keller North America, Inc.*

Dear Mr. Garcia:

      Please be advised that this law firm represents the interests of your former employer, Keller North America, Inc. ("Keller" or the "Company").  We write to remind you of your continuing legal obligations to Keller under the employment agreement ("Agreement") that you entered into for the benefit of Keller and to demand your immediate action and assurances.  ***If you are represented by legal counsel with respect to the matters contained in this letter, I ask that you provide this letter to your attorney immediately.***

      While working for Keller, you had significant and direct access to and worked with confidential, proprietary, and trade secret information, including highly confidential information relating to the Company's clients and business.  Your employment with Keller was conditioned on your promise to comply with various obligations during and after your employment that are designed to protect the Company's confidential information and trade secrets.  Those promises were set out most recently in the enclosed Agreement, which you signed with an effective date of September 30, 2019.

***Your Obligation Not to Compete***

      For a period of one year after the end of your employment, you are prohibited from working for any company, entity, or person that engages in Keller's Business, as that term is defined in the Agreement, in (i) Miami-Dade County, Florida; (ii) Broward County, Florida; and (iii) Palm Beach County, Florida.  *See* Agreement, Section 3.1(a).  You are further prohibited, in the same area, from performing services as an independent contractor, consultant, agent, partner, joint venturer, shareholder, or otherwise for any company, entity, or person that engages in Keller's Business.  *See* Agreement, Section 3.1(b).

***Your Obligation Not to Solicit or Divert Customers***

For a period of one year after the end of your employment, you are prohibited from "soliciting or diverting away, or attempting to solicit or divert, the business of any entity or person who is a current, former, or potential customer, supplier, or referral source of the Company." *See* Agreement, Section 3.1(c).

***Your Obligation Not to Solicit or Recruit Employees***

For a period of one year after the end of your employment, you are prohibited from "soliciting or recruiting, or attempting to solicit or recruit, for [yourself] or for any organization with which [you are] connected, any employee of the Company or any persons who, within one (1) year of such solicitation or recruitment, was employed by the Company." *See* Agreement, Section 3.1(d).

***Requested Assurances***

We have received information that you are currently working for Berkel and Company Contractors, Inc., which is engaged in the same Business as Keller and is a competitor of the Company. We also have reason to believe that you may have violated the restrictive covenants in your Agreement. Please know that Keller takes these agreements very seriously. Thus, the purpose of this letter is to demand that you immediately cease and desist all violations of your Agreement. Should you breach your obligations, the Company will take all measures available to enforce its rights and protect its legitimate interests under the Agreement.

Because of the potential for litigation in this case, please understand that you should immediately take steps to prevent the destruction of potentially relevant evidence. In particular, we ask that you preserve all computers, handheld electronic devices (including phones, tablets, etc.) and data storage media, including both internal and external computer hard drives and cloud storage, utilized by you to avoid the deletion, destruction, or modification of any electronically stored information, including emails, that in any way mentions or relates to Keller, that was sent from/to Keller, or that contains any of Keller's customer or business information. If you fail to prevent the destruction or deletion of this information, we will take the position you have intentionally destroyed relevant evidence.

Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any rights or remedies, either at law or in equity, in connection with any of the matters raised in this letter, all of which are expressly reserved.

We look forward to your cooperation. Please contact me directly if you have any questions about this matter.

Sincerely,

Laura Bailey Brown
For FISHER & PHILLIPS LLP

cc: Charles Caulkins, Esq.

## NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Non-Competition and Non-Solicitation Agreement ("*Agreement*") is made and entered into on September 30, 2019 (the "*Effective Date*") by and between HJ Foundation Company (the "*Company*") and Elison Garcia ("*Employee*"). The Company and the Employee (together, the "*Parties*"), intending to be legally bound, agree as follows:

## 1.    DEFINITIONS.

In addition to terms defined above and elsewhere in this Agreement, the following terms shall have the following meanings when used in this Agreement:

**1.1.**    "*Restricted Area*" shall mean (i) Miami-Dade County, Florida, (ii) Broward County, Florida, and (iii) Palm Beach County, Florida.

**1.2.**    "*Restricted Period*" shall mean the one-year period following the termination of the Employee's employment with the Company for any of the reasons set forth in Section 3.4 below. The Restricted Period shall be tolled during (and shall be deemed automatically extended by) any period of time in which the Employee is in violation of the terms of Section 3 below.

**1.3.**    "*Cause*" shall mean: (a) poor performance of assigned duties or responsibilities; (b) willful misconduct; (c) fraud; (d) breach of fiduciary duty; (e) deliberate and material refusal to perform assigned duties or responsibilities or to comply with reasonably-established policies of the Company; or (f) inability to perform the essential functions of the position due to a dependence on any addictive substance.

**1.4.**    "*Competitor*" shall mean a company, entity, or person that engages in the Business.

## 2.    EMPLOYEE'S ACKNOWLEDGMENTS.

**2.1.**    Employee acknowledges that: (a) Employee has received, and has become familiar with, the Company's trade secrets, valuable confidential business information, and/or valuable professional information; (b) the Employee has developed substantial relationships with specific prospective or existing customers, clients, and/or vendors of the Company; and/or (c) the Employee has received extraordinary and/or specialized training from the Company.

**2.2.**    Employee further acknowledges that: (a) Employee is an at-will employee of the Company; (b) the Company is engaged in the business of providing ground improvement, foundation drilling, earth retention, groundwater control, and/or other geotechnical services (collectively, the "*Business*"); (c) Employee has carefully read this Agreement, fully understands the restraints imposed upon the Employee by this Agreement, and voluntarily agrees to its terms and conditions; (d) Employee was not coerced to sign this Agreement and was not under duress at the time Employee signed this Agreement; (e) prior to signing this Agreement, Employee had adequate time to consider entering into this Agreement, including, without limitation, the opportunity to discuss the terms and conditions of this Agreement, as well as its legal

Employee's Initials *EG*

consequences, with an attorney of Employee's choice; and (f) given the nature and scope of the Company's Business, each and every restraint imposed by this Agreement (*see infra* Section 3) is reasonable with respect to subject matter, time period, and geographical area.

## 3.    NON-COMPETITION AND NON-SOLICITATION.

**3.1.**    In consideration of Employee's continued at-will employment with the Company, Employee hereby agrees to refrain from the following activities, directly or indirectly, while employed by the Company and during the Restricted Period:

(a)    within the Restricted Area, becoming employed by any Competitor;

(b)    within the Restricted Area, performing services as an independent contractor, consultant, agent, partner, joint venturer, shareholder, or otherwise for any Competitor;

(c)    soliciting or diverting away, or attempting to solicit or divert, the business of any entity or person who is a current, former, or potential customer, supplier, or referral source of the Company; and

(d)    soliciting or recruiting, or attempting to solicit or recruit, for the Employee or any organization with which the Employee is connected, any employee of the Company or any persons who, within one (1) year of such solicitation or recruitment, was employed by the Company.

**3.2.**    The Employee acknowledges that a violation by the Employee of any of the covenants contained in this Section 3 would cause irreparable damage to the Company in an amount that would be material but not readily ascertainable, and that any remedy at law (including the payment of damages) would be inadequate.    Accordingly, the Employee agrees that, notwithstanding any provision of this Agreement to the contrary, the Company shall be entitled to injunctive relief (including temporary restraining orders, preliminary injunctions, and/or permanent injunctions) in any court of competent jurisdiction for any actual or threatened breach of any of the covenants set forth in this Section 3 in addition to any other legal or equitable remedies it may have. The preceding sentence shall not be construed as a waiver of the rights that the Company may have for damages under this Agreement or otherwise, and all of the Company's rights shall be unrestricted.

**3.3.**    If any portion of this Section 3 is held to be unreasonable, unenforceable, arbitrary, or against public policy, then such portion shall be considered divisible as to time, geographical area, and prohibited activities.  If any court of competent jurisdiction determines the specified time period, geographic area, or specified prohibited activities applicable to this Section 3 to be unreasonable, arbitrary, or against public policy, then a lesser time period, geographic area, or prohibited activities which are determined to be reasonable, non-arbitrary, and not against public policy may be enforced against Employee.

v06/12/2019

Employee's Initials *EG*

2

**3.4.**　　This Agreement, including the terms in this Section 3, applies only if: (a) the Employee terminates his or her employment with the Company for any reason; or (b) if the Company terminates the Employee for Cause.

**3.5.**　　This Agreement, including the terms in this Section 3, shall become null and void if, during the term of Employee's employment with the Company, the Company decreases or lowers Employee's base salary, job title, and/or job duties.

## 4.　　CONSIDERATION.

In consideration for the Employee's agreement to comply with this Agreement and the covenants in Section 3 above, the adequacy of which is hereby acknowledged by the Employee, the Company will continue Employee's participation in the Company's discretionary bonus program and continue Employee's at-will employment with the Company.

## 5.　　MISCELLANEOUS.

**5.1.　　Entire Agreement; Modifications**.　　This Agreement supersedes all prior agreements between the Parties with respect to its subject matter and constitutes a complete and exclusive statement of the terms of the agreement between the Parties with respect to its subject matter.  This Agreement may not be amended, supplemented, or otherwise modified except by a written agreement executed by the Parties.

**5.2.　　Assignments**.  The Company may assign this Agreement, or any of its rights and duties hereunder, without the Employee's consent, to any subsidiary or affiliate of the Company or to any person or entity which acquires all, or substantially all, of the assets or business of the Company or any of the Company's divisions.

**5.3.　　Governing Law; Jurisdiction**. This Agreement will be governed by and construed under the laws of the State of Florida without regard to conflicts of laws principles that would require the application of any other law.  Any action or proceeding arising out of or relating to this Agreement may be brought in the courts of the State of Florida; or, if there is a basis for jurisdiction, such actions may be brought in the United States District Court for the Southern District of Florida.  The Parties irrevocably submit to the jurisdiction of such courts in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

[SIGNATURES ON THE FOLLOWING PAGE]

v06/12/2019

Employee's Initials _EG_

3

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the Effective Date.

**HJ FOUNDATION COMPANY**                    **Elison Garcia**

By: _____          _____

Name: _MARK  M,  DEVANEY_

Title: _DIR  PROJ  MGMT_

[END OF SIGNATURE PAGE]



fisherphillips.com

**Kansas City**
46 Penn Centre
4622 Pennsylvania Avenue
Suite 910
Kansas City, MO  64112
(816) 842-8770 Tel
(816) 842-8767 Fax

**Writer's Direct Dial:**
(816) 460-0208

**Writer's E-mail:**
lkbrown@fisherphillips.com

October 9, 2024

***Via FedEx and Email***

Dylan Mitchell
909 Rosa L. Parks Blvd. 445
Nashville, Tennessee 37208
Email: Dylanmitchell816@gmail.com

   Re:  *Contractual Obligations to Keller North America, Inc.*

Dear Mr. Mitchell:

   Please be advised that this law firm represents the interests of your former employer, Keller North America, Inc. ("Keller" or the "Company").  We write to remind you of your continuing legal obligations to Keller under the employment agreement ("Agreement") that you entered into for the benefit of Keller and to demand your immediate action and assurances.  ***If you are represented by legal counsel with respect to the matters contained in this letter, I ask that you provide this letter to your attorney immediately.***

   While working for Keller, you had significant and direct access to and worked with confidential, proprietary, and trade secret information, including highly confidential information relating to the Company's clients and business.  Your employment with Keller was conditioned on your promise to comply with various obligations during and after your employment that are designed to protect the Company's confidential information and trade secrets.  Those promises were set out most recently in the enclosed Agreement, which you signed on September 23, 2019.

***Your Obligation Not to Compete***

   For a period of one year after the end of your employment with Keller, you are prohibited from employment on behalf of any company that is involved in the provision of services equivalent or similar to *Geotechnical Construction* using *Mircopiles, Soil Nail, Compaction Grouting, and Ground Anchor techniques* within the State of Maryland.

*See* Agreement, p. 2, para. a.ii.

***Your Obligation Not to Solicit Employees and Customers***

For a period of one year after the end of your employment, you shall refrain from (1) contacting, soliciting any of the current or former customers of the Company, or (2) soliciting any of the employees of the Company, who at the time of the separation from services, are employees of the Company, or who served in such capacity within the six-month period prior to your separation from service.

*See* Agreement, p. 2, para. a.i.

***Requested Assurances***

We have received information that you are currently working for Berkel and Company Contractors, Inc., which is engaged in business operations in competition with Keller. If true, this is a violation of your Agreement. Please know that Keller takes these agreements very seriously. Thus, the purpose of this letter is to demand that you immediately cease and desist all violations of your Agreement. Should you continue to breach your obligations, the Company will take all measures available to enforce its rights and protect its legitimate interests under the Agreement.

Because of the potential for litigation in this case, please understand that you should immediately take steps to prevent the destruction of potentially relevant evidence. In particular, we ask that you preserve all computers, handheld electronic devices (including phones, tablets, etc.) and data storage media, including both internal and external computer hard drives and cloud storage, utilized by you to avoid the deletion, destruction, or modification of any electronically stored information, including emails, that in any way mentions or relates to Keller, that was sent from/to Keller, or that contains any of Keller's customer or business information. If you fail to prevent the destruction or deletion of this information, we will take the position you have intentionally destroyed relevant evidence.

Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any rights or remedies, either at law or in equity, in connection with any of the matters raised in this letter, all of which are expressly reserved.

We look forward to your cooperation. Please contact me directly if you have any questions about this matter.

Sincerely,

Laura Bailey Brown
For FISHER & PHILLIPS LLP

cc: Joseph Shelton, Esq.



September 17, 2019

Dylan Mitchell
1111 Light Street, Apt. 509
Baltimore, MD 21230

Dear Dylan:

We are pleased to offer you a position with Hayward Baker, Inc. (the "Company"). Your credentials and experience make you an excellent candidate, and we believe you will find the position challenging and rewarding.

The conditions of our offer are as follows:

| Position: | Project Engineer: Your responsibilities will be to provide engineering and field support for projects using Micropiles, Soil Nail, Compaction Grouting, and Ground Anchor techniques throughout the Mid-Atlantic Region. |
|---|---|
| Position Status: | Regular Full-Time, Exempt |
| Location: | Baltimore, MD |
| Report To: | Joe Cavey, Vice President |
| Anticipated Start Date: | September 30, 2019 |
| Compensation: | $65,000.00 per year (Salaried) |
| Company Property: | Corporate Credit Card, Company Paid Cell Phone, and Laptop |

**Benefits**
Your health benefits will be effective first of the month after 30 days of employment.  Please refer to the materials that are enclosed for additional details. You will receive sick, vacation and holiday leave time per our company policy.

**Transportation**
You will be provided with a vehicle allowance of $650.00/month paid on a weekly basis ($150.00). Any tax liability resulting from this benefit will be borne by you (taxed as ordinary income). Additionally, business miles for fuel will be reimbursed upon receipt of an expense report at a rate of $0.20/mile for the first 10,000 business miles/year and $0.35/mile for business miles over 10,000 per year. You will be responsible for proper documentation and any personal IRS liabilities regarding reporting of business miles.

**Travel**
The Company will reimburse you for reasonable travel expenses incurred on Company business as outlined in the attached Company Out-of-Town policy. You will be categorized as a "Class I" employee.

**Hayward Baker, Inc.**
7550 Teague Road
Suite 400
Hanover, MD 21076

t:   866-597-5430
f:   410-799-4196

Equal Opportunity Employer

**THINK SAFE**

INITIAL HERE  DM

Dylan Mitchell
September 17, 2019
Page 2

**Safety**

The Company is committed to providing a safe work environment for all of our employees. As part of your employment, you are expected to meet or exceed our safety standards. This includes a strong personal commitment to safety and a commitment that safe work practices are the Company's most important priority. You are expected to perform routine safety inspections to confirm safe work practices of others and keep safety training up to date as required by the Company.

**Solicitation, Non-Competition and Confidentiality.**

a. In consideration of the engagement by the Company of you as an employee hereunder, of the "*Confidential Information*" (as later defined) furnished to you by the Company so that you may perform your duties as an employee, and of the investment by the Company of considerable time, effort and money in building relationships with customers, referral sources and suppliers, you agree that if (1) you terminate your agreement with the Company or (2) the Company terminated you as a result of your gross failure to fulfill for job duties, then within 1 year after your separation from service with the Company, unless such termination is by mutual written amendment:

    i. You will refrain from (1) contacting, soliciting any of the current or former customers of the Company or (2) soliciting any of the employees of the Company, who at the time of the separation from service are employees of the Company, or who served in such capacity within the six-month period prior to your separation from service.

    ii. You will refrain from employment on behalf of any company that is involved in the provision of services equivalent or similar to *Geotechnical Construction* using *including Micropiles, Soil Nail, Compaction Grouting, and Ground Anchor techniques* within the State of Maryland (Maryland shall hereinafter be the "Territory").

    iii. The provision of subsections a.i. & ii. shall only be effective if (a) you terminate your agreement with the Company or (2) the Company terminates you as a result of your gross failure to fulfill for job duties.

    "*Gross Failure*" shall be defined as follows and apply to the preceding, current and following clauses, without limitation: Acting in a manner equivalent to gross negligence or recklessness; or acting with the intent to harm the business interest of the Company, acting in an illegal manner or performing illegal acts."

b. It is understood and intended by you and the Company that each promise made in this Section 8 shall be construed as an agreement independent of any other provision in this Agreement.  The Company and you agree that if any arbitrator or court determines the time period, geographic area or prohibited activities in this Section 8 to be unreasonable, arbitrary or against public policy, then a lesser time period, geographic area or prohibited activities which are determined to be reasonable, non-arbitrary and not against public policy may be enforced in their place.



INITIAL HERE  DM

Dylan Mitchell
September 17, 2019
Page 3

    c.  In recognition of the Company's significant investment of time, effort and money in developing and preserving Confidential Information, and as an inducement for the Company to enter into this Agreement, you agree to hold all Confidential Information in confidence as the sole property of the Company while you are employed and after your employment with the Company, whether such termination is with or without cause, by you or the Company, or voluntarily or involuntarily. You will not use or disclose Confidential Information to any person or company without the written consent of the Company, except in the performance of your duties, or as specifically directed by the Company. *"Confidential Information"* shall mean publicly unavailable information concerning the business of the Company, including but not limited to, all inventions, secrets, mailing lists, customer and vendor lists and requirements, data regarding referral sources, operating procedures and results, marketing and business plans, marketing research, data relating to product reliability, specifications or performance, systems, techniques, price lists and pricing information, knowhow or financial and statistical data relating to the Company's business.

**Drug and Alcohol Screening**

As a condition of employment, you are required to submit to and pass a drug and alcohol screening at the Company's expense. All results will be forwarded confidentially to our Human Resources Department.

The Company is an at-will employer and reserves the right to terminate you with or without any notice or reason, just as you retain the same right to terminate your employment with the Company. The Company is an E-Verify employer.

If this offer is acceptable to you, please sign and return the attachment by September 13, 2019.

If you have any questions or concerns, please feel free to contact me or Joe Cavey. We look forward to your response and the opportunity to work with you.

Sincerely,

KELLER FOUNDATIONS LLC

*Brian Perrier*

Brian D. Perrier
Talent Acquisition Manager



INITIAL HERE __DM__

Dylan Mitchell
September 17, 2019
Page 4

I have received the offer and accept the opportunity to become a Project Engineer for Hayward Baker, Inc. I understand that this offer is conditional upon my successfully passing a Company paid drug and alcohol screen. I further understand that my authorization to drive for the Company, receive an auto allowance or mileage reimbursement is contingent upon the review of my driving record and ensuring that it meets Company standards.

My official start date will be: _____.

_____            9/23/2019
Employee Signature                                        Date

Return by September 23, 2019 to:

Molly Wilson
Recruiting Coordinator
**Keller Foundations LLC**
Phone:  410-874-0042 x10315
Email:  molly.wilson@kellerfoundations.com



INITIAL HERE DM



fisherphillips.com

**Kansas City**
46 Penn Centre
4622 Pennsylvania Avenue
Suite 910
Kansas City, MO 64112
(816) 842-8770 Tel
(816) 842-8767 Fax

**Writer's Direct Dial:**
(816) 460-0208

**Writer's E-mail:**
lkbrown@fisherphillips.com

October 9, 2024

***Via FedEx and Email***

Jordan Moi
3917 Cross Creek Road
Nashville, Tennessee 37215
Email: Jmm626@gmail.com

     Re:     *Contractual Obligations to Keller North America, Inc.*

Dear Mr. Moi:

Please be advised that this law firm represents the interests of your former employer, Keller North America, Inc. ("Keller" or the "Company"). We write to remind you of your continuing legal obligations to Keller under the employment agreement ("Agreement") that you entered into for the benefit of Keller and to demand your immediate action and assurances. ***If you are represented by legal counsel with respect to the matters contained in this letter, I ask that you provide this letter to your attorney immediately.***

While working for Keller, you had significant and direct access to and worked with confidential, proprietary, and trade secret information, including highly confidential information relating to the Company's clients and business. Your employment with Keller was conditioned on your promise to comply with various obligations during and after your employment that are designed to protect the Company's confidential information and trade secrets. Those promises were set out most recently in the enclosed Agreement, which you signed on December 8, 2016, and reaffirmed and/or acknowledged on December 22, 2020.

### *Your Obligation Not to Compete*

For a period of one year after the end of your employment with Keller, you are prohibited from employment on behalf of any company that is involved in the provision of services equivalent or similar to *Geotechnical Construction* using *Vibro Replacement, Vibro Compaction, Aggregate Piers, Soil Mixing, Micropiles, Soil Nails, or Anchors techniques w*ithin the State of Tennessee.

*See* Agreement, p. 2, para. a.ii.

*Your Obligation Not to Solicit Employees and Customers*

For a period of one year after the end of your employment, you shall refrain from (1) contacting, soliciting any of the current or former customers of the Company, or (2) soliciting any of the employees of the Company, who at the time of the separation from services, are employees of the Company, or who served in such capacity within the six-month period prior to your separation from service.

*See* Agreement, p. 2, para. a.i.

*Requested Assurances*

We have received information that you are currently working for Berkel and Company Contractors, Inc., which is engaged in business operations in competition with Keller. If true, this is a violation of your Agreement. Please know that Keller takes these agreements very seriously. Thus, the purpose of this letter is to demand that you immediately cease and desist all violations of your Agreement. Should you continue to breach your obligations, the Company will take all measures available to enforce its rights and protect its legitimate interests under the Agreement.

Because of the potential for litigation in this case, please understand that you should immediately take steps to prevent the destruction of potentially relevant evidence. In particular, we ask that you preserve all computers, handheld electronic devices (including phones, tablets, etc.) and data storage media, including both internal and external computer hard drives and cloud storage, utilized by you to avoid the deletion, destruction, or modification of any electronically stored information, including emails, that in any way mentions or relates to Keller, that was sent from/to Keller, or that contains any of Keller's customer or business information. If you fail to prevent the destruction or deletion of this information, we will take the position you have intentionally destroyed relevant evidence.

Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any rights or remedies, either at law or in equity, in connection with any of the matters raised in this letter, all of which are expressly reserved.

We look forward to your cooperation. Please contact me directly if you have any questions about this matter.

Sincerely,

Laura Bailey Brown
For FISHER & PHILLIPS LLP

cc: Joseph Shelton, Esq.



December 7, 2016

Jordan M. Moi
426 – 510 Prairie Avenue
Saskatoon, SK S7N 2V4

Dear Jordan:

We are pleased to offer you a position with Hayward Baker, Inc., (the "Company"). Your credentials and experience make you an excellent candidate and we believe you will find the position challenging and rewarding.

The conditions of our offer are as follows:

| | |
|---|---|
| **Position:** | Project Manager: Your responsibility will be to coordinate the activities of Structural Support projects within the Southern Region. |
| **Position Status:** | Regular Full-Time, Exempt |
| **Location:** | Hayward Baker, Inc. |
| **Report To:** | Bill Endo, Vice President |
| **Anticipated Transfer Date:** | This transfer will begin upon the approval of your TN visa. We anticipate your start date to be on or about January 23, 2017. You will be given service credit for your previous employment with North American Construction Group from May 6, 2008 to July 12, 2013, and with Keller Foundations Ltd. from July 13, 2013 to date. |
| **Compensation:** | $86,500.00 per year (Salaried) |
| **Benefit Eligible:** | Yes – please see enclosed benefits packet for further information. If you choose to elect health benefits, they will be effective the first day of employment. You will eligible to participate in our retirement plan on the 1st of the month following 30 days of employment. During your first year of employment with the Company, you will accrue vacation at a rate of 3 weeks per year. |
| **Bonus Program:** | As part of your compensation, you will participate in our incentive bonus program for Project Managers. This bonus will be based on the overall financial performance of the Company and the financial performance of the Nashville, TN office and the Southern Region. The branch bonus pool will be divided according to individual merit and contribution to the branch and Company result. In order to receive this bonus, you must be employed by the Company on the date it is paid. |
| **Transportation:** | Your vehicle allowance will be changed to $700/month paid on a weekly |

**Hayward Baker, Inc.**
7550 Teague Road
Suite 400
Hanover, MD 21076

t: 866-597-5430
f: 410-799-4196
Equal Opportunity Employer – Minorities/Females/Disabled/Veterans

THINK SAFE

INITIAL HERE_____

Jordan M. Moi
December 7, 2016
Page 2

| | |
|---|---|
| | basis ($161.54/week). Any tax liability resulting from this benefit will be borne by you (taxed as ordinary income). Additionally, business miles for fuel will be reimbursed upon receipt of an expense report at a rate of $0.20/mile for the first 10,000 business miles/year and $0.35/mile for business miles over 10,000 per year. You will be responsible for proper documentation and any personal IRS liabilities regarding reporting of business miles. |
| **Company Property:** | Company paid cell phone, corporate credit card, and a laptop |
| **Relocation Terms:** | We anticipate up to a maximum of six months to be spent in the Atlanta, GA area and upon your permanent relocation to the Nashville, TN area, the Company will reimburse your direct costs associated with the move up to a maximum of $20,000.00. Please provide proper documentation to Human Resources for reimbursement. Please do not charge to your Company credit card.<br><br>In addition, the Company has agreed to pay you a one-time disturbance allowance in the amount of $5,000, as taxed as ordinary income. In order to receive this allowance, you must be employed by the Company on the date it is paid. You can expect this allowance to be paid upon your permanent relocation to the Nashville, TN area. |

**Travel**
The Company will reimburse you for reasonable travel expenses incurred on Company business as outlined in the attached Company Out-of-Town policy. You will be categorized as a "Class I" employee.

**Safety**
The Company is committed to providing a safe work environment for all of our employees. As part of your employment, you are expected to meet or exceed our safety standards. This includes a strong personal commitment to safety and a commitment that safe work practices are the Company's most important priority. You are expected to perform routine safety inspections to confirm safe work practices of others, and keep safety training up to date as required by the Company.

**Solicitation, Non-Competition and Confidentiality**
   A. In consideration of the engagement by the Company of you as an employee hereunder, of the "*Confidential Information*" (as later defined) furnished to you by the Company so that you may perform your duties as an employee, and of the investment by the Company of considerable time, effort and money in building relationships with customers, referral sources and suppliers, you agree that if (1) you terminate your agreement with the Company or (2) the Company terminated you as a result of your gross failure to fulfill for job duties, then within 1 year after your separation from service with the Company, unless such termination is by mutual written amendment:

   a. You will refrain from (1) contacting, soliciting any of the current or former customers of the Company or (2) soliciting any of the employees of the Company, who at the time of the separation from service are employees of the Company, or who served in such capacity within the six-month period prior to your separation from service.

   b. You will refrain from employment on behalf of any company that is involved in the provision of services equivalent or similar to *Geotechnical Construction* using *including Vibro Replacement, Vibro Compaction, Aggregate Piers, Soil Mixing, Micropiles, Soil Nails or Anchors techniques* within the State of Tennessee shall hereinafter be the "Territory".

   c. The provision of subsections A.a & b shall only be effective if (1) you terminate your agreement with the Company or (2) the Company terminates you as a result of your gross failure to fulfill for job duties.

Jordan M. Moi
December 7, 2016
Page 3

      i.   "*Gross Failure*" shall be defined as follows and apply to the preceding, current and following clauses, without limitation: Acting in a manner equivalent to gross negligence or recklessness; or acting with the intent to harm the business interest of the Company, acting in an illegal manner or performing illegal acts."

B.   It is understood and intended by you and the Company that each promise made in this Solicitation, Non-Competition and Confidentiality Section shall be construed as an agreement independent of any other provision in this Agreement. The Company and you agree that if any arbitrator or court determines the time period, geographic area or prohibited activities in this Solicitation, Non-Competition and Confidentiality Section to be unreasonable, arbitrary or against public policy, then a lesser time period, geographic area or prohibited activities which are determined to be reasonable, non-arbitrary and not against public policy may be enforced in their place.

C.   In recognition of the Company's significant investment of time, effort and money in developing and preserving Confidential Information, and as an inducement for the Company to enter into this Agreement, you agree to hold all Confidential Information in confidence as the sole property of the Company while you are employed and after your employment with the Company, whether such termination is with or without cause, by you or the Company, or voluntarily or involuntarily. You will not use or disclose Confidential Information to any person or company without the written consent of the Company, except in the performance of your duties, or as specifically directed by the Company. *"Confidential Information"* shall mean publicly unavailable information concerning the business of the Company, including but not limited to, all inventions, secrets, mailing lists, customer and vendor lists and requirements, data regarding referral sources, operating procedures and results, marketing and business plans, marketing research, data relating to product reliability, specifications or performance, systems, techniques, price lists and pricing information, knowhow or financial and statistical data relating to the Company's business.

**Drug and Alcohol Screening**
As a condition of employment, you are required to submit to and pass a drug and alcohol screening at the Company's expense. All results will be forwarded confidentially to our Human Resources Department.

The Company is an at-will employer and reserves the right to terminate you with or without any notice or reason, just as you retain the same right to terminate your employment with the Company. The Company is an E-Verify employer.

If this offer is acceptable to you, please sign and return the attachment by December 16, 2016.

If you have any questions or concerns, please feel free to contact me or Bill Endo. We look forward to your response and the opportunity to work with you.


Sincerely,

KELLER FOUNDATIONS LLC


*Brian Perrier*


Brian D. Perrier
Talent Acquisition Manager




INITIAL HERE_____

Jordan M. Moi
December 7, 2016
Page 4

I have received the offer and accept the opportunity to become a Project Manager for Hayward Baker, Inc. I understand that this offer is conditional upon my successfully passing a Company paid drug and alcohol screen. I further understand that my authorization to drive for the Company, receive an auto allowance or mileage reimbursement is contingent upon the review of my driving record and ensuring that it meets Company standards.

My official transfer date will be:  _____.

_____          _____
Employee Signature                                              Date

Return by December 16, 2016 to:

Emily M. McNair
Human Resources Specialist
**Keller Foundations LLC**
Phone:  410-874-0042 x10156
Email:  emmcnair@kellerfoundations.com

INITIAL HERE_____



December 7, 2016

Jordan M. Moi
426 – 510 Prairie Avenue
Saskatoon, SK S7N 2V4

Dear Jordan,

We are pleased to offer you a position with Hayward Baker, Inc., (the "Company"). Your credentials and experience make you an excellent candidate and we believe you will find the position challenging and rewarding.

The conditions of our offer are as follows:

| | |
|---|---|
| **Position:** | Project Manager: Your responsibility will be to coordinate the activities of Structural Support projects within the Southern Region. |
| **Position Status:** | Regular Full-Time, Exempt |
| **Location:** | Hayward Baker, Inc. |
| **Report To:** | Bill Endo, Vice President |
| **Anticipated Transfer Date:** | This transfer will begin upon the approval of your TN visa. We anticipate your start date to be on or about January 23, 2017. You will be given service credit for your previous employment with North American Construction Group from May 6, 2008 to July 12, 2013, and with Keller Foundations Ltd. from July 13, 2013 to date. |
| **Compensation:** | $86,500.00 per year (Salaried) |
| **Benefit Eligible:** | Yes – please see enclosed benefits packet for further information. If you choose to elect health benefits, they will be effective the first day of employment. You will eligible to participate in our retirement plan on the 1st of the month following 30 days of employment. During your first year of employment with the Company, you will accrue vacation at a rate of 3 weeks per year. |
| **Bonus Program:** | As part of your compensation, you will participate in our incentive bonus program for Project Managers. This bonus will be based on the overall financial performance of the Company and the financial performance of the Nashville, TN office and the Southern Region. The branch bonus pool will be divided according to individual merit and contribution to the branch and Company result. In order to receive this bonus, you must be employed by the Company on the date it is paid. |
| **Transportation:** | Your vehicle allowance will be changed to $700/month paid on a weekly |

**Hayward Baker, Inc.**
7550 Teague Road
Suite 400
Hanover, MD 21076

THINK SAFE

t: 866-597-5430
f: 410-799-4196
Equal Opportunity Employer – Minorities/Females/Disabled/Veterans

INITIAL HERE _JM_

Jordan M. Moi
December 7, 2016
Page 2

| | |
|---|---|
| | basis ($161.54/week). Any tax liability resulting from this benefit will be borne by you (taxed as ordinary income). Additionally, business miles for fuel will be reimbursed upon receipt of an expense report at a rate of $0.20/mile for the first 10,000 business miles/year and $0.35/mile for business miles over 10,000 per year. You will be responsible for proper documentation and any personal IRS liabilities regarding reporting of business miles. |
| **Company Property:** | Company paid cell phone, corporate credit card, and a laptop |
| **Relocation Terms:** | We anticipate up to a maximum of six months to be spent in the Atlanta, GA area and upon your permanent relocation to the Nashville, TN area, the Company will reimburse your direct costs associated with the move up to a maximum of $20,000.00. Please provide proper documentation to Human Resources for reimbursement. Please do not charge to your Company credit card.<br><br>In addition, the Company has agreed to pay you a one-time disturbance allowance in the amount of $5,000, as taxed as ordinary income. In order to receive this allowance, you must be employed by the Company on the date it is paid. You can expect this allowance to be paid upon your permanent relocation to the Nashville, TN area. |

**Travel**
The Company will reimburse you for reasonable travel expenses incurred on Company business as outlined in the attached Company Out-of-Town policy. You will be categorized as a "Class I" employee.

**Safety**
The Company is committed to providing a safe work environment for all of our employees. As part of your employment, you are expected to meet or exceed our safety standards. This includes a strong personal commitment to safety and a commitment that safe work practices are the Company's most important priority. You are expected to perform routine safety inspections to confirm safe work practices of others, and keep safety training up to date as required by the Company.

**Solicitation, Non-Competition and Confidentiality**

A. In consideration of the engagement by the Company of you as an employee hereunder, of the "*Confidential Information*" (as later defined) furnished to you by the Company so that you may perform your duties as an employee, and of the investment by the Company of considerable time, effort and money in building relationships with customers, referral sources and suppliers, you agree that if (1) you terminate your agreement with the Company or (2) the Company terminated you as a result of your gross failure to fulfill for job duties, then within 1 year after your separation from service with the Company, unless such termination is by mutual written amendment:

    a. You will refrain from (1) contacting, soliciting any of the current or former customers of the Company or (2) soliciting any of the employees of the Company, who at the time of the separation from service are employees of the Company, or who served in such capacity within the six-month period prior to your separation from service.

    b. You will refrain from employment on behalf of any company that is involved in the provision of services equivalent or similar to *Geotechnical Construction* using *including Vibro Replacement, Vibro Compaction, Aggregate Piers, Soil Mixing, Micropiles, Soil Nails or Anchors techniques* within the State of Tennessee shall hereinafter be the "Territory".

    c. The provision of subsections A.a & b shall only be effective if (1) you terminate your agreement with the Company or (2) the Company terminates you as a result of your gross failure to fulfill for job duties.

INITIAL HERE JM

Jordan M. Moi
December 7, 2016
Page 3

     i.  "*Gross Failure*" shall be defined as follows and apply to the preceding, current and following clauses, without limitation: Acting in a manner equivalent to gross negligence or recklessness; or acting with the intent to harm the business interest of the Company, acting in an illegal manner or performing illegal acts."

B.  It is understood and intended by you and the Company that each promise made in this Solicitation, Non-Competition and Confidentiality Section shall be construed as an agreement independent of any other provision in this Agreement.  The Company and you agree that if any arbitrator or court determines the time period, geographic area or prohibited activities in this Solicitation, Non-Competition and Confidentiality Section to be unreasonable, arbitrary or against public policy, then a lesser time period, geographic area or prohibited activities which are determined to be reasonable, non-arbitrary and not against public policy may be enforced in their place.

C.  In recognition of the Company's significant investment of time, effort and money in developing and preserving Confidential Information, and as an inducement for the Company to enter into this Agreement, you agree to hold all Confidential Information in confidence as the sole property of the Company while you are employed and after your employment with the Company, whether such termination is with or without cause, by you or the Company, or voluntarily or involuntarily.  You will not use or disclose Confidential Information to any person or company without the written consent of the Company, except in the performance of your duties, or as specifically directed by the Company. "*Confidential Information*" shall mean publicly unavailable information concerning the business of the Company, including but not limited to, all inventions, secrets, mailing lists, customer and vendor lists and requirements, data regarding referral sources, operating procedures and results, marketing and business plans, marketing research, data relating to product reliability, specifications or performance, systems, techniques, price lists and pricing information, knowhow or financial and statistical data relating to the Company's business.

**Drug and Alcohol Screening**
As a condition of employment, you are required to submit to and pass a drug and alcohol screening at the Company's expense. All results will be forwarded confidentially to our Human Resources Department.

The Company is an at-will employer and reserves the right to terminate you with or without any notice or reason, just as you retain the same right to terminate your employment with the Company. The Company is an E-Verify employer.

If this offer is acceptable to you, please sign and return the attachment by December 16, 2016.

If you have any questions or concerns, please feel free to contact me or Bill Endo. We look forward to your response and the opportunity to work with you.


Sincerely,

KELLER FOUNDATIONS LLC

*Brian Perrier*

Brian D. Perrier
Talent Acquisition Manager




INITIAL HERE _____

Jordan M. Moi
December 7, 2016
Page 4

I have received the offer and accept the opportunity to become a Project Manager for Hayward Baker, Inc. I understand that this offer is conditional upon my successfully passing a Company paid drug and alcohol screen. I further understand that my authorization to drive for the Company, receive an auto allowance or mileage reimbursement is contingent upon the review of my driving record and ensuring that it meets Company standards.

My official transfer date will be: _____.

_____         Dec 8, 2016
Employee Signature              Date

Return by December 16, 2016 to:

Emily M. McNair
Human Resources Specialist
**Keller Foundations LLC**
Phone:  410-874-0042 x10156
Email:  emmcnair@kellerfoundations.com

INITIAL HERE JM

# KELLER

Keller-NA.com

December 21, 2020

Dear Jordan:

We would like to thank you for all your hard work, and dedication as part of the Keller North America, Inc. (the "Company") team. Per your conversation with Joe Persichetti, we have recognized your success and are pleased to offer you a promotion to Senior Project Manager. Congratulations on this great achievement.

| Position: | Senior Project Manager |
| --- | --- |
| Position Status: | Regular Full-Time, Exempt |
| Location: | Nashville, TN |
| Report To: | Ken Bowman, Area Manager |
| Compensation: | $108,000 per year (Salaried), effective January 4, 2021 |

**Bonus Program**
As part of your compensation, you will continue to participate in our incentive bonus program. In order to receive this bonus, you must be employed by the Company on the date it is paid.

**Vehicle Allowance**
You will be provided with a vehicle allowance of $9,000/year paid on a weekly basis ($173.08). Any tax liability resulting from this benefit will be borne by you (taxed as ordinary income). Additionally, business miles for fuel will be reimbursed upon receipt of an expense report at a rate of $0.20/mile for the first 10,000 business miles/year and $0.35/mile for business miles over 10,000 per year. You will be responsible for proper documentation and any personal IRS liabilities regarding reporting of business miles.

**Safety**
The Company is committed to providing a safe work environment for all of our employees. As part of your employment, you are expected to meet or exceed our safety standards. This includes a strong personal commitment to safety and a commitment that safe work practices are the Company's most important priority. You are expected to perform routine safety inspections to confirm safe work practices of others and keep safety training up to date as required by the Company.

Please note that all other terms and conditions of your employment with Keller, including your non-solicitation, non-competition, and confidentiality obligations (as set forth in your December 7, 2016 agreement), are unchanged and will remain in full force and effect.

If this offer is acceptable to you, please sign and return the attachment by January 4, 2021.

If you have any questions or concerns, please feel free to contact me or Joe Persichetti. We look forward to your response.

Sincerely,
KELLER NORTH AMERICA, INC.


Dasha Lackey
Human Resources Business Partner


_Jordan Moi_ (signature)
Jordan Moi

DEC 22, 2020
Date

**Keller North America, Inc.**
7550 Teague Road
Suite 300
Hanover, MD 21076

t:   866-597-5430
f:   410-799-4196

Equal Opportunity Employer

**THINK SAFE**

INITIAL HERE _JM_



fisherphillips.com

**Kansas City**
46 Penn Centre
4622 Pennsylvania Avenue
Suite 910
Kansas City, MO  64112
(816) 842-8770 Tel
(816) 842-8767 Fax

**Writer's Direct Dial:**
(816) 460-0208

**Writer's E-mail:**
lkbrown@fisherphillips.com

October 9, 2024

*Via FedEx and Email*

Ricardo Picayo
8940 SW 156 Street
Miami, Florida 33157
Email: rpicayo@hotmail.com

      Re:    *Contractual Obligations to Keller North America, Inc.*

Dear Mr. Picayo:

Please be advised that this law firm represents the interests of your former employer, Keller North America, Inc. ("Keller" or the "Company").  We write to remind you of your continuing legal obligations to Keller under the employment agreement ("Agreement") that you entered into for the benefit of Keller and to demand your immediate action and assurances.  ***If you are represented by legal counsel with respect to the matters contained in this letter, I ask that you provide this letter to your attorney immediately.***

While working for Keller, you had significant and direct access to and worked with confidential, proprietary, and trade secret information, including highly confidential information relating to the Company's clients and business.  Your employment with Keller was conditioned on your promise to comply with various obligations during and after your employment that are designed to protect the Company's confidential information and trade secrets.  Those promises were set out most recently in the enclosed Agreement, which you signed on July 13, 2020, and reaffirmed and/or acknowledged on November 5, 2021.

### *Your Obligation Not to Compete*

For a period of one year after the end of your employment with Keller, you are prohibited from employment on behalf of any company that is involved in the provision of services equivalent or similar to Geotechnical Construction using Micropiles and Soil Anchors, Vibro Compactions, Vibro Replacement, Rigid Inclusions, Soil Mixing techniques, Auger Cast Piles, Drill Displacement Piles, Sheet Pile Installation and Drilled Shafts within the State of Florida.

*See* Agreement, p. 2, para. a.ii.

### *Your Obligation Not to Solicit Employees and Customers*

For a period of one year after the end of your employment, you shall refrain from (1) contacting, soliciting any of the current or former customers of the Company, or (2) soliciting any of the employees of the Company, who at the time of the separation from services, are employees of the Company, or who served in such capacity within the six-month period prior to your separation from service.

*See* Agreement, p. 2, para. a.i.

### *Requested Assurances*

We have received information that you are currently working for Berkel and Company Contractors, Inc., which is engaged in business operations in competition with Keller.  If true, this is a violation of your Agreement. Please know that Keller takes these agreements very seriously. Thus, the purpose of this letter is to demand that you immediately cease and desist all violations of your Agreement. Should you continue to breach your obligations, the Company will take all measures available to enforce its rights and protect its legitimate interests under the Agreement.

Because of the potential for litigation in this case, please understand that you should immediately take steps to prevent the destruction of potentially relevant evidence.  In particular, we ask that you preserve all computers, handheld electronic devices (including phones, tablets, etc.) and data storage media, including both internal and external computer hard drives and cloud storage, utilized by you to avoid the deletion, destruction, or modification of any electronically stored information, including emails, that in any way mentions or relates to Keller, that was sent from/to Keller, or that contains any of Keller's customer or business information.  If you fail to prevent the destruction or deletion of this information, we will take the position you have intentionally destroyed relevant evidence.

Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any rights or remedies, either at law or in equity, in connection with any of the matters raised in this letter, all of which are expressly reserved.

We look forward to your cooperation.  Please contact me directly if you have any questions about this matter.

Sincerely,

Laura Bailey Brown
For FISHER & PHILLIPS LLP

cc:  Charles Caulkins, Esq.



Keller-NA.com

October 29, 2021

Ricky Picayo
8940 SW 156 St
Miami, FL 33157

Dear Ricky:

We would like to thank you for all your hard work, and dedication as part of the Keller North America, Inc. (the "Company") team. Per your conversation with Jose Martinez, we are pleased to offer you a position as Operations Manager, Keller Florida. Congratulations on this great achievement!

The conditions of our offer are as follows:

| | |
|---|---|
| **Position:** | Operations Manager, Keller Florida |
| **Position Status:** | Regular Full Time (RFT); Exempt |
| **Location:** | Miami, FL |
| **Report To:** | Frank Fonseca, SVP |
| **Effective Date:** | 11/15/2021 |
| **Compensation:** | $154,440 per year (Salary) |

**Benefits**

There will be no changes to your benefits or leave time a result of this promotion.

**Bonus Program**

As part of your compensation, you will participate in our incentive bonus program. In order to receive this bonus, you must be employed by the Company on the date it is paid.

**Company Vehicle**

You will continue to be provided with a Company vehicle for business use. This vehicle is fully equipped for use on the job. The Company will provide a credit card to be used for maintenance, repairs and gasoline and the Company also covers the insurance for this vehicle. You must hold an active driver license and comply with company driver rules and regs to be able to drive the company vehicle.

**Safety**

The Company is committed to providing a safe work environment for all our employees. As part of your employment, you are expected to meet or exceed our safety standards. This includes a strong personal

**Keller North America, Inc.**
7550 Teague Road
Suite 300
Hanover, MD 21076

t:  866-597-5430
f:  410-799-4196

Equal Opportunity Employer

THINK SAFE

INITIAL HERE

Ricky Picayo
October 29, 2021
Page 2

commitment to safety and a commitment that safe work practices are the Company's most important priority. You are expected to perform routine safety inspections to confirm safe work practices of others and keep safety training up to date as required by the Company.

**Disclosure**

You agree that during the term of your employment with the Company, you will disclose only to the Company all ideas, methods, plans, developments or improvements known by you which relate directly or indirectly to the business of the Company, whether acquired by you before or during your employment with the Company. Nothing in this section shall be construed as requiring any such communication where the idea, plan, method, or development is lawfully protected from disclosure prohibition against such communication

**Solicitation, Non-Competition, and Confidentiality**

You will remain employed under your same employment terms and conditions, and this does not affect your Solicitation, Non-Competition and Confidentiality obligations under your previously signed letter.

If this offer is acceptable to you, please sign and return the attachment by November 5, 2021. If you have any questions or concerns, please feel free to contact Frank Fonseca or me. We look forward to your response.

Sincerely,

Keller North America, Inc.

Adrienne Johnson
HR Business Partner- Keller North America

**I have received the offer and accept the promotion to Operations Manager, Keller Florida within Keller North America, Inc.**

_Ricky Picayo_
_____
**Ricky Picayo**

11/5/2021
_____
**Date**

**KELLER**

INITIAL HERE 

Ricky Picayo
October 29, 2021
Page 3

I have received the letter outlining the terms of my promotion to Operations Manager, Keller Florida. I understand that my authorization to drive for the Company, receive an auto allowance or mileage reimbursement is contingent upon the review of my driving record and ensuring that it meets Company standards.

_____ *Ricky Picayo* _____     _____ 11/5/2021 _____
**Ricky Picayo**                          **Date**

**KELLER**

INITIAL HERE 



Keller-NA.com

July 13, 2020

Ricardo Picayo
8940 SW 156 Street
Miami, FL 33157

Dear Ricky:

We would like to thank you for all your hard work, and dedication as part of the Keller North America, Inc. (the "Company") team. Per your conversation with Jose Martinez, we have recognized your success and are pleased to offer you a promotion to Operations Manager. Congratulations on this great achievement!

The conditions of our offer are as follows:

| | |
|---|---|
| **Position:** | Operations Manager |
| **Position Status:** | Regular Full-Time, Exempt |
| **Location:** | Miami, FL |
| **Report To:** | Jose Martinez, Vice President Operations |
| **Effective Date:** | July 6, 2020 |
| **Compensation:** | $130,000 per year (Salaried) |
| **Company Property:** | Company issued phone, computer, purchase card, company truck |

**Benefits**
There will be no changes to your benefits.

**Vacation, Sick, and Holiday Leave Accrual**
There will be no changes.

**Bonus**
As part of your compensation, you will participate in our incentive bonus program. In order to receive this bonus, you must be employed by the Company on the date it is paid. This calculation is flexible based on job performance and overall margin of prior financial results.

**Company Vehicle**
You will continue to be provided with a Company vehicle for business use. This vehicle is fully equipped for use on the job. The Company will provide a credit card to be used for maintenance, repairs and gasoline and the Company also covers the insurance for this vehicle. **You must hold an active driver license and comply with company driver rules and regs to be able to drive the company vehicle.**

**Safety**
The Company is committed to providing a safe work environment for all of our employees. As part of your employment, you are expected to meet or exceed our safety standards. This includes a strong personal commitment to safety and a commitment that safe work practices are the Company's most important priority. You are expected to perform routine safety inspections to confirm safe work practices of others and keep safety training up to date as required by the Company.

**Keller North America, Inc.**
7550 Teague Road
Suite 300
Hanover, MD 21076

**THINK SAFE**

t:  866-597-5430
f:  410-799-4196

INITIAL HERE RJP

Equal Opportunity Employer

Ricardo Picayo
July 13, 2020
Page 2

**Disclosure**

You agree that during the term of your employment with the Company, you will disclose only to the Company all ideas, methods, plans, developments or improvements known by you which relate directly or indirectly to the business of the Company, whether acquired by you before or during your employment with the Company.

Nothing in this section shall be construed as requiring any such communication where the idea, plan, method, or development is lawfully protected from disclosure prohibition against such communication.

**Solicitation, Non-Competition, and Confidentiality**

A. In consideration of the engagement by the Company of you as an employee hereunder, of the "*Confidential Information*" (as later defined) furnished to you by the Company so that you may perform your duties as an employee, and of the investment by the Company of considerable time, effort and money in building relationships with customers, referral sources and suppliers, you agree that if (1) you terminate your agreement with the Company or (2) the Company terminated you as a result of your gross failure to fulfill for job duties, then within 1 year after your separation from service with the Company, unless such termination is by mutual written amendment:

    a. You will refrain from (1) contacting, soliciting any of the current or former customers of the Company or (2) soliciting any of the employees of the Company, who at the time of the separation from service are employees of the Company, or who served in such capacity within the six-month period prior to your separation from service.

    b. You will refrain from employment on behalf of any company that is involved in the provision of services equivalent or similar to *Geotechnical Construction using Micropiles and Soil Anchors, Vibro Compaction, Vibro Replacement, Rigid Inclusions, Soil Mixing techniques, Auger Cast Piles, Drill Displacement Piles, Sheet Pile Installation and Drilled Shafts* within the State of Florida (Florida shall hereinafter be the "Territory").

    c. The provision of subsections A.a. & b. shall only be effective if (1) you terminate your agreement with the Company or (2) the Company terminates you as a result of your gross failure to fulfill for job duties.

    "*Gross Failure*" shall be defined as follows and apply to the preceding, current and following clauses, without limitation: Acting in a manner equivalent to gross negligence or recklessness; or acting with the intent to harm the business interest of the Company, acting in an illegal manner or performing illegal acts."

B. It is understood and intended by you and the Company that each promise made in this Solicitation, Non-Competition, and Confidentiality Section shall be construed as an agreement independent of any other provision in this Agreement. The Company and you agree that if any arbitrator or court determines the time period, geographic area or prohibited activities in this Solicitation, Non-Competition, and Confidentiality Section to be unreasonable, arbitrary or against public policy, then a lesser time period, geographic area or prohibited activities which are determined to be reasonable, non-arbitrary and not against public policy may be enforced in their place.

C. In recognition of the Company's significant investment of time, effort and money in developing and preserving Confidential Information, and as an inducement for the Company to enter into this Agreement, you agree to hold all Confidential Information in confidence as the sole property of the Company while you are employed and after your employment with the Company, whether such termination is with or without cause, by you or the Company, or voluntarily or involuntarily. You



INITIAL HERE RJP

Ricardo Picayo
July 13, 2020
Page 3

will not use or disclose Confidential Information to any person or company without the written consent of the Company, except in the performance of your duties, or as specifically directed by the Company. *"Confidential Information"* shall mean publicly unavailable information concerning the business of the Company, including but not limited to, all inventions, secrets, mailing lists, customer and vendor lists and requirements, data regarding referral sources, operating procedures and results, marketing and business plans, marketing research, data relating to product reliability, specifications or performance, systems, techniques, price lists and pricing information, knowhow or financial and statistical data relating to the Company's business.

If this offer is acceptable to you, please sign and return the attachment by July 15, 2020. If you have any questions or concerns, please feel free to contact me or Jose Martinez. We look forward to your response.

Sincerely,
KELLER MANAGEMENT SERVICES LLC

Shannon Price
HR Business Partner – Keller North America



INITIAL HERE <u>RJP</u>

Ricardo Picayo
July 13, 2020
Page 4

I have received the letter outlining the terms of my promotion to Operations Manager. I understand that my authorization to drive for the Company, receive an auto allowance or mileage reimbursement is contingent upon the review of my driving record and ensuring that it meets Company standards.

_____          _____7-13-20_____
Ricardo Picayo                                    Date





fisherphillips.com

**Kansas City**
46 Penn Centre
4622 Pennsylvania Avenue
Suite 910
Kansas City, MO  64112
(816) 842-8770 Tel
(816) 842-8767 Fax

**Writer's Direct Dial:**
(816) 460-0208

**Writer's E-mail:**
lkbrown@fisherphillips.com

October 9, 2024

***Via FedEx***

Robert Scott, Jr.
7058 Beckwith Road
Mount Juliet, Tennessee 37122

  Re: *Contractual Obligations to Keller North America, Inc.*

Dear Mr. Scott:

  Please be advised that this law firm represents the interests of your former employer, Keller North America, Inc. ("Keller" or the "Company").  We write to remind you of your continuing legal obligations to Keller under the various employment agreement ("Agreement") that you entered into for the benefit of Keller and to demand your immediate action and assurances.  ***If you are represented by legal counsel with respect to the matters contained in this letter, I ask that you provide this letter to your attorney immediately.***

  While working for Keller, you had significant and direct access to and worked with confidential, proprietary, and trade secret information, including highly confidential information relating to the Company's clients and business.  Your employment with Keller was conditioned on your promise to comply with various obligations during and after your employment that are designed to protect the Company's confidential information and trade secrets.  Those promises were set out most recently in the enclosed Agreement, which you signed on June 14, 2024.

### *Confidentiality*

  You are required to hold all Confidential Information, as that term is defined within the Agreement, in confidence as the sole property of the Company.  You are prohibited from using or disclosing any Confidential Information to any person or other company without the written consent of Keller.

*See* Agreement, p. 2, para. C.

### *Your Obligation Not to Solicit Employees and Customers*

For a period of one year after the end of your employment, you shall refrain from (1) contacting, soliciting any of the current or former customers of the Company, or (2) soliciting any of the employees of the Company, who at the time of the separation from services, are employees of the Company, or who served in such capacity within the six-month period prior to your separation from service.

*See* Agreement, p. 2, para. a.i.

### *Requested Assurances*

We have received information that you are currently working for Berkel and Company Contractors, Inc., which is engaged in business operations in competition with Keller. We also have reason to believe that you may have violated the restrictive covenants in your Agreement. Please know that Keller takes these agreements very seriously. Thus, the purpose of this letter is to demand that you immediately cease and desist all violations of your Agreement. Should you breach your obligations, the Company will take all measures available to enforce its rights and protect its legitimate interests under the Agreement.

Because of the potential for litigation in this case, please understand that you should immediately take steps to prevent the destruction of potentially relevant evidence. In particular, we ask that you preserve all computers, handheld electronic devices (including phones, tablets, etc.) and data storage media, including both internal and external computer hard drives and cloud storage, utilized by you to avoid the deletion, destruction, or modification of any electronically stored information, including emails, that in any way mentions or relates to Keller, that was sent from/to Keller, or that contains any of Keller's customer or business information. If you fail to prevent the destruction or deletion of this information, we will take the position you have intentionally destroyed relevant evidence.

Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any rights or remedies, either at law or in equity, in connection with any of the matters raised in this letter, all of which are expressly reserved.

We look forward to your cooperation. Please contact me directly if you have any questions about this matter.

Sincerely,

*Laura Bailey Brown*

Laura Bailey Brown
For FISHER & PHILLIPS LLP

cc: Joseph Shelton, Esq.



keller-na.com

June 10, 2024

Dear Bob Scott:

We would like to thank you for all your hard work, and dedication as part of the Keller North America, Inc. (the "Company") team. Per your conversation with Tanner Blackburn, we would like to offer you a deferred compensation plan as outlined below.

| Position: | Director Engineering Services |
| --- | --- |
| Position Status: | Regular Full-Time, Exempt |
| Location: | Nashville, TN (managed out of Hanover) |
| Report To: | Tanner Blackburn |
| Effective Date: | June 10, 2024 |
| Compensation: | $221,500.00 per year (Salaried) – *No change* |

**Deferred Compensation Plan**

The company has agreed to a one-time bonus payment of $110,750.00 which will be paid to you on June 10, 2027. This bonus is considered taxable income which will be taxed at your regular income rates. If you terminate your employment prior to this date, June 10, 2027, or the Company terminates you for Cause, then you will forfeit any bonus money and potential distributions of the bonus balance.

For all purposes in this letter agreement, "Cause" shall mean any of the following conduct by you, which significantly and adversely affects the Company: willful misconduct; material fraud; material breach of fiduciary duty involving personal profit; deliberate and material refusal to perform assigned duties or responsibilities or to comply with reasonably-established Company policies (provided, however, that termination for such refusal or non-compliance shall not be considered termination for Cause unless you are given written notice of such refusal or non-compliance and do not cure such refusal or non-compliance within thirty days of receipt of said notice); conviction of a felony; material breach of any provision of this Agreement; inability to perform the essential functions of the position due to a dependence on any addictive substance, including but not limited to alcohol, amphetamines, barbiturates, hallucinogens, or narcotic drugs, provided, however, that any termination for such inability and dependence must be consistent with applicable law.

Any termination by the Employer that is not for "Cause" as defined above, shall be deemed a termination without Cause. In the event the Employer terminates you without Cause, the Employee shall receive a pro-rated portion of the bonus funds based on their separation date within the bonus timeframe (June 10, 2024 – June 10, 2027). This will be paid out as a one-time bonus, which is considered taxable income and will be taxed at your regular income rates.

**Keller North America, Inc.**
7550 Teague Road
Suite 300
Hanover, MD 21076

t:  410-874-0042
f:  410-799-4196



Equal Opportunity Employer – Minorities/Females/Disabled/Veterans

**Solicitation and Confidentiality**

A. In consideration of the engagement by the Company of you as an employee hereunder, of the "Confidential Information" (as later defined) furnished to you by the Company so that you may perform your duties as an employee, and of the investment by the Company of considerable time, effort and money in building relationships with customers, referral sources and suppliers, you agree that if (1) you terminate your agreement with the Company or (2) the Company terminated you as a result of your gross failure to fulfill for job duties, then within 1 year after your separation from service with the Company, unless such termination is by mutual written amendment:

   a. You will refrain from (1) contacting, soliciting any of the current or former customers of the Company, or (2) soliciting any of the employees of the Company who at the time of the separation from service are employees of the Company or who served in such capacity within the six-month period prior to your separation from service.

      i. "Gross Failure" shall be defined as follows and apply to the preceding, current, and following clauses, without limitation: Acting in a manner equivalent to gross negligence or recklessness; or acting with the intent to harm the business interest of the Company, acting in an illegal manner, or performing illegal acts."

B. It is understood and intended by you and the Company that each promise made in this Solicitation, and Confidentiality Section shall be construed as an agreement independent of any other provision in this Agreement. The Company and you agree that if any arbitrator or court determines the time period, geographic area, or prohibited activities in this Solicitation, and Confidentiality Section to be unreasonable, arbitrary, or against public policy, then a lesser time period, geographic area, or prohibited activities which are determined to be reasonable, non-arbitrary and not against public policy may be enforced in their place.

C. In recognition of the Company's significant investment of time, effort, and money in developing and preserving Confidential Information, and as an inducement for the Company to enter into this Agreement, you agree to hold all Confidential Information in confidence as the sole property of the Company while you are employed and after your employment with the Company, whether such termination is with or without cause, by you or the Company, or voluntarily or involuntarily. You will not use or disclose Confidential Information to any person or company without the written consent of the Company, except in the performance of your duties, or as specifically directed by the Company. "Confidential Information" shall mean publicly unavailable information concerning the business of the Company, including but not limited to, all inventions, secrets, mailing lists, customer and vendor lists, and requirements, data regarding referral sources, operating procedures and results, marketing and business plans, marketing research, data relating to product reliability, specifications or performance, systems, techniques, price lists, and pricing information, knowhow or financial and statistical data relating to the Company's business.



This Solicitation and Confidentiality section shall be governed by the laws of the State of Tennessee. The parties agree to the venue and jurisdiction of the Tennessee courts for any dispute arising out of this Solicitation and Confidentiality section.

If you have any questions or concerns, please feel free to contact me or Tanner Blackburn.

Sincerely,
Keller Management Services LLC

Genna Schlein
HR Manager

---

**Offer Acceptance:**

I, Robert Scott, Jr., have received the offer and accept the terms of the deferred compensation plan.



Robert Scott Jr.                                                                 Date

Digitally signed by Robert Scott
DN: C=US, E=rscott@keller-na.com, OU=Keller North Ameria CN=Robert Scott
Date: 2024.06.14 13:40:16-05'00'

